**UNITED STATES, Plaintiff,**

v.

**Salvatore JULIANO, Sr., Samuel Verderese, Anthony Juliano, Michael Taccetta, Michael Perna, Thomas Ricciardi, Daniel Ricciardi, a/k/a "Bobo," William Corea and Anthony Zecchino, Defendants.**

Criminal Action No. 92–723 (AJL).

United States District Court, D. New Jersey.

Nov. 22, 1996.

Faith S. Hochberg, United States Attorney, Bryan Blaney, Special Assistant U.S. Attorney, Newark, NJ, for Government.

Michael D'Alessio, West Orange, NJ, for defendant Salvatore Juliano.

Richard Roberts, Roberts and Fielo, West Orange, NJ, for defendant Anthony Juliano.

## OPINION

LECHNER, District Judge.

An eighty-four count indictment (the "Indictment") was filed on 29 December 1992 against Salvatore Juliano, Sr. ("Salvatore Juliano"), Anthony Juliano ("Anthony Juliano") (collectively the "Defendants") and seven others.

The Indictment charged the Defendants with violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d), extortion, 18 U.S.C. § 1951, money laundering, 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(b)(i) and (a)(1)(B)(ii), monetary transactions involving criminally derived property, 18 U.S.C. § 1957, corruption, 18 U.S.C. § 666(a)(1)(B), (a)(2), and embezzlement, 18 U.S.C. § 666(a)(1)(A).

On 14 September 1993, the Defendants entered into plea agreements with the Government by which they agreed to plead guilty to count one of the Indictment which charged them with "conspiracy to conduct and participate in the conduct of the affairs of an enterprise, namely the Newark Division of Sanitation, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d)" ("Section 1962(d)"). *See* Plea Agreement of Salvatore Juliano and Plea Agreement of Anthony Juliano (collectively the "Plea Agreements").

The Defendants are subject to a maximum prison sentence of twenty years for their violations of Section 1962(d). *See* 18 U.S.C. § 1963(a). The Defendants' presentence investigation reports set forth the sentencing ranges, under the United States Sentencing Guidelines (the "Guidelines"), as follows: Salvatore Juliano: "based on a total offense level of 27 and a criminal history category of I, the guideline range for imprisonment is 70 to 87 months," Presentence Investigation Report for Salvatore Juliano, ¶ 131; Anthony Juliano: "[B]ased on a total offense level of 18 and a criminal history category of I, the guideline range for imprisonment is 27–33 months," Presentence Investigation Report for Anthony Juliano, ¶ 110.

A point motion was filed by the Defendants to compel specific performance of the Plea Agreements and order the Government to file a downward departure motion pursuant to 18 U.S.C. § 3553(e) ("Section 3553(e)")[1] and U.S.S.G. § 5K1.1 ("Section 5K1.1") (the "Motion to Compel").[2] For the

---

1. Section 3553(e) provides:

   Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

   18 U.S.C. § 3553(e). Because the Defendants have not pleaded guilty to a crime with a statuto-

ry minimum sentence, *see* 18 U.S.C. § 1963(a), Section 3553(e) is irrelevant to the instant opinion. *See generally Melendez v. United States,* — U.S. ——, ——–——, 116 S.Ct. 2057, 2060–61, 135 L.Ed.2d 427 (1996).

2. In support of the Motion to Compel, the Defendants have submitted: "Letter Memorandum in Support of Defendant's (sic) Motion For Specific Performance of the Plea Agreement and to Compel the Government to File a Downward Departure Motion Pursuant to 18 U.S.C.. (sic) 3553(e) and 5K1.1 of the United States Sentencing Guidelines" (the "Defense Brief"); Certification

reasons set forth below, the Motion to Compel is denied.

### Facts

The facts underlying the numerous charges filed against the Defendants were set forth at length in an unpublished letter-opinion which addressed various pre-trial motions. The facts relevant to the instant opinion are set forth below.

### A. *The Plea Agreements*

As indicated, on 14 September 1993 the Defendants entered into the Plea Agreements. Aside from the defendant named, the Plea Agreements are identical. The Plea Agreements provide that if the Defendants entered guilty pleas, agreed to cooperate with the Government in the investigation and prosecution of Federal criminal offenses, pursuant to the terms of the Plea Agreements, and are sentenced on count one, "then, at the time of sentencing the United States Attorney for the District of New Jersey will dismiss the remaining Counts of the Indictment...." Plea Agreements at 1. The Plea Agreements additionally provide that if the Defendants

> fully [comply] with the terms of [these] agreement[s], and prior to [their] sentencing *provide substantial assistance* in the investigation and prosecution of one or more persons who have committed a federal offense, the United States will: (1) move the sentencing court, pursuant to Section 5K1.1 of the Sentencing Guidelines, to depart from the otherwise applicable guideline range; or (2) in the event that the sentencing court declines to depart from the applicable guideline range, recommend that the sentencing court impose the minimum sentence required under the applicable guideline range. *However, the decision to make the motion for a downward departure under Sentencing Guideline 5K1.1 is in the sole discretion of the United States.*

Plea Agreements at 4 (emphasis added).

The Plea Agreements, moreover, specifically provide that:

> With respect to evaluating the significance of any cooperation for purposes of meeting the requirements for credit under the "substantial assistance" provision of the Guidelines, The (sic) Government is obliged to inform the sentencing court in a full and fair manner of the relative importance or insignificance of the information provided. The information that will be provided will depend upon a number of factors including the importance of any case developed and the degree to which [the Defendants'] information contributed to such case development. *[The Defendants] should understand that not infrequently information provided by a cooperating individual turns out to be merely cumulative, and therefore of little relative significance.* While the person who provided the information may have made every effort to be completely cooperative, that fact does not make the information any more valuable. The Government is obliged to provide the Sentencing Court with an accurate assessment of value, as well as an assessment of the defendant's cooperativeness.

Plea Agreements at 4 (emphasis added).

After executing the Plea Agreements, the Defendants attempted to cooperate with the Government. *See* Sentencing Memorandum at 10. The Government does not allege the Defendants breached the terms of the Plea Agreements. *Id.* The Government, however, has determined the Defendants have not provided substantial assistance; accordingly, the Government has decided not to file a motion for downward departure.

### B. *The Plea Hearing*

On 20 September 1993, a plea hearing (the "Plea Hearing") was held during which the

of Michael D'Alessio, Jr.; Certification of Richard Roberts, Esq. (the "Roberts Cert."); Certification of Salvatore Juliano, Sr. (the "Salvatore Juliano Cert.").

In opposition to the Motion to Compel, the Government has submitted: "Sentencing Memorandum" (the "Sentencing Memorandum") attaching a copy of the plea agreement between the Government and Salvatore Juliano.

Defendants pleaded guilty to count one of the Indictment.[3] During the Plea Hearing, the Government characterized the Plea Agreements as "cooperating plea agreements." Plea Tr. at 4. The Government stated the Defendants had "indicated their willingness to assist the Government in continuing prosecutions and *should* that result in substantial assistance, ... [the Government would] propose a motion pursuant to [Rule 5K1.1] to reflect that cooperation." *Id.* (emphasis added).

The Defendants indicated they understood and agreed with the terms and conditions of the Plea Agreements. Plea Tr. at 7–9. The Defendants testified their attorneys had explained their rights and that the Plea Agreements "fairly and accurately" stated their agreements with the Government. *Id.* at 8–9. The Defendants further testified they had not been promised a "light sentence" or "any particular sentence" for their decisions to plead guilty. *Id.* at 10.

The consequences of the decision to plead guilty were explained to the Defendants. Plea Tr. at 14–16. The Defendants were cautioned that if their pleas were accepted, "a violation of count one of the indictment carries a statutory maximum penalty of 20 years imprisonment and/or a fine of up to $250,000." *Id.* at 14. The Defendants were also informed if they were sentenced to prison they would "be required to serve a term of supervised release of between three and five years" and that violation of the terms or conditions of supervised release could result in "up to an additional three years" imprisonment. *Id.* at 15.

The Defendants testified they were "satisfied with the services" of their attorneys and the decisions to plead guilty to count one of the indictment were their own. Plea Tr. at 17. The Defendants, moreover, testified they understood the Plea Agreements would be binding even if they received sentences that were "more severe" than expected. *Id.* at 19.

The Defendants testified they had read the Indictment, had discussed count one "in detail" with their attorneys and understood all the allegations contained in count one. *Id.* at 31. In addition to giving an adequate factual basis for their pleas, the Defendants confessed they "knowingly, willfully and intentionally committed the conduct set forth in count one of the indictment." *Id.* at 31–32.

The Government requested an "open date" for the sentencing the Defendants. Plea Tr. at 36. The reason for setting an "open date" was to provide the Defendants with the "opportunity to cooperate" with the Government. *Id.* at 36. The Defendants indicated they had discussed the Government's request with their attorneys and had no objection to setting a sentencing date at a later point. *Id.* at 37.

### C. The First Salvatore Juliano Sentencing Hearing [4]

A sentencing hearing for Salvatore Juliano was held on 27 June 1996 (the "First Salvatore Juliano Sentencing Hearing").[5] At the

---

3. References to the transcript of the Plea Hearing will be cited as: Plea Tr. at [page number].

4. References to the transcript of the Sentencing Hearing will be cited as: First Sentencing Tr., S. Juliano at [page number].

5. The sentencing of the Defendants has been delayed. Prior to the First Sentencing Hearing, Counsel for Salvatore Juliano twice requested adjournments on behalf of the Defendants to facilitate negotiations with the Government regarding restitution. *See* letters of Michael D'Alessio, dated 29 May and 19 June 1996. The sentencing had also been adjourned once because of a "scheduling problem." *Id.* Because of the Defendants' request to make the Motion to Compel, the sentencing was further delayed. Finally, the sentencing was again delayed because Counsel for Salvatore Juliano on 1 October 1996,

requested an adjournment of four to five weeks. *See* letter of Michael D'Alessio, Jr., dated 1 October 1996.

Because of the failure of the Defendants and the Government to come to terms on the issue of restitution, counsel for Salvatore Juliano informed the court: "[B]ecause a significant amount of money is being sought by the Government, if ... [a restitution] hearing is necessary, ... [he had] no objection, nor [did counsel for Anthony Juliano], if the hearing is held subsequent to the sentencing so as not to hold up the sentencing in this matter." *See* letter of Michael D'Alessio, Jr., dated 19 June 1996; Second Salvatore Juliano Sentencing Hearing Transcript ("Second Sentencing Tr., S. Juliano") at 49–51. At the sentencing for Anthony Juliano, counsel confirmed his client had no objection to holding a hearing on restitution after sentencing. Sen-

First Salvatore Juliano Sentencing Hearing, counsel informed the court he had just become aware the Government would not move for a downward departure. First Sentencing Tr., S. Juliano at 3. Counsel further stated the Government had indicated it would move for a downward departure and suggested the Government's decision not to so move was made in bad faith. *Id.* at 7–8. Counsel stated he found it inappropriate that he was informed of the Government's decision on the morning of the First Salvatore Juliano Sentencing Hearing after "presuming" for three years the Government would move for a downward departure. *Id.* at 10. Counsel further stated he had been "misled" by the Government into believing Salvatore Juliano was "cooperating substantially." *Id.* at 17.

In response, the Government informed the court no arrests, indictments or prosecutions had resulted from Salvatore Juliano's assistance. First Sentencing Tr., S. Juliano at 8–9. The Government, moreover, stated the decision not to file a Section 5K1.1 motion had not been made in "bad faith and there were no misrepresentations made to counsel." *Id.* at 7. It was observed that "[m]erely because [a defendant] wanted to cooperate or merely because [a defendant] spoke with the Government, that does not equate to substantial cooperation." *Id.* at 9. It was further observed that based upon the circumstances of Salvatore Juliano's assistance, as then represented by the Government at the First Sentencing Hearing, a downward departure was not warranted. *Id.* at 10.

Counsel agreed more than mere cooperation was required before a defendant would be entitled to a 5K1.1 motion, but argued the court should consider the "quality and quantity of the cooperation, whether *it* results in substantial assistance to the Government." First Sentencing Tr., S. Juliano at 17 (emphasis added). This position was accepted and counsel was advised this was "something [he would] have to pursue" and was asked to "make ... a proffer." *Id.* at 18–19. Counsel responded by requesting leave to file the instant motion. *Id.* at 19. Counsel indicated the motion would include an affidavit from Salvatore Juliano "setting forth in detail ex-

tencing Hearing Transcript, Anthony Juliano

actly what he's done for the Government." *Id.* at 19. The Defendants were then given leave to file the instant motion. *Id.* at 22–24.

### D. *The Actual Sentencing Hearings*

Salvatore Juliano was sentenced on 15 November 1996; Anthony Juliano was sentenced on 18 November 1996. At the Second Salvatore Juliano Sentencing Hearing, after counsel argued, he was asked whether he had anything else to say or anything else to offer in support of the motion. He responded he did not and that he was relying on the certification and brief, in addition to the oral argument. Second Sentencing Hearing Tr., S. Juliano at 11–12. At the hearing, counsel argued Salvatore Juliano had complied with his obligations under the Plea Agreement and that the Government should be compelled to file a motion for a downward departure. In comparing the submissions on behalf of Salvatore Juliano with those on behalf of the Government, counsel for Salvatore Juliano stated:

> I can see reading those papers, ... [t]here is a legitimate difference in opinion, but I don't think that's the test for withholding the 5K [motion]. I don't think the Government has to say if 100 percent is pure satisfaction, you have to go to 100 percent. I don't know whether they have to go to 51 or 75 or 92, I don't know.
>
> But certainly it isn't simply a question of whether the Government is ecstatic with the cooperation. I think the question is: Did he comply with this deal? I think that's what the cases say. That's it in a nutshell.

Second Sentencing Tr., S. Juliano at 10.

Counsel for the Government argued the Plea Agreement with Salvatore Juliano was plain on its face.

> This agreement was—could not have been, in the United States' estimate, more explicitly outlined for the defendant. There was no confusion or no misunderstanding and certainly no bad faith on behalf of the United States in the agreement that it reached with this defendant and the United States has attempted and

("Sentencing Tr., A. Juliano") at 11.

represents, submits, has satisfactorily complied with every element, every letter of this agreement as well as [the] spirit [of the agreement].

*Id.* at 15. In response to the argument of counsel for Salvatore Juliano that the very fact of the time and extent of the Government's review of the cooperation of Salvatore Juliano itself underscores his cooperation and suggests the bad faith of the Government in refusing to file a departure motion, counsel for the Government stated:

The United States, again attempting to be very, very careful in terms of meeting its obligations with this agreement, pursuant to this agreement, did, in fact, have a very lengthy and careful review of any possibility that assistance provided by this defendant should warrant a motion.

*Id.* at 16.

Counsel for the Government pointed out that the argument of Salvatore Juliano missed the point and, therefore, was unavailing. It was argued that:

There are two areas that are evaluated here . . . and I think that in his argument, this defendant is confusing the two. One is that he has met the terms of his plea agreement. The United States is not otherwise suggesting. . . .

The second question, however, is: If I [have] met the terms of that agreement, am I entitled to this motion, this 5K motion? That's where he is mistaken. . . . It is only if he had been able to provide substantial assistance to the prosecution or investigation of other crimes that he would have been—that a 5K motion would have been warranted. That did not happen. . . .

*Id.* at 17–18.

At the sentencing hearing for Anthony Juliano, counsel indicated that he did not wish to offer any further argument on this motion and acknowledged that it was fully argued during the Second Sentencing Hearing of Salvatore Juliano. Sentencing Tr., A. Juliano at 3. However, counsel for Anthony Juliano did state: "The Government, I believe, recognized Anthony Juliano's situation in this case and offered to allow him to get the benefit of the 5K [motion] should his

father come through with something substantial." *Id.* at 4.

E. *Assistance Provided by the Defendants*

Salvatore Juliano states the Defendants' decisions to plead guilty caused "the remaining defendants in the case" to also plead guilty. Salvatore Juliano Cert., ¶ 3. He admitted, however, he has no basis for this assertion but he has concluded "that because Mr. Verderse, myself and my son plead (sic) guilty that had something to do with [the remaining defendants] pleading guilty subsequently." *Id.* Salvatore Juliano further alleged he provided the Government substantial assistance by providing information regarding the illegal activities of the following individuals:

(a) The Tobia Brothers. I explained how their over billing scheme worked with the city; how personal items for the Tobias were purchased and kept, but were billed to the city and how tickets for certain city functions for Councilmen and the Mayor were sold. I also explained how certain appliances were bought from (sic) Tobia Brothers through (sic) the personal use of Al Zach and paid by the city. After my cooperation I understand the Tobia Brothers came in to cooperate with the Government.

(b) Al Lembo, Jr. I explained how his over billing scheme worked with the trucking and salt spreading and how it was done to pay for tickets for the Mayor and Councilmen functions. I also explained how personal items purchased by Lembo for his personal use were paid by the city and how Lembo was fixing and maintaining Corea's trucks at the city (sic) expense for a period of years. I also explained how Mr. Lembo gave Mr. Corea money to loan on the streets.

(c) Sam Verderse. Mr. Verderse has since passed away, but I explained to the Government his schemes for overbilling and for different contractors, including the Tobia Brothers, Lembo, Dellasanti and Basso. I also explained Mr. Verderse's involvement in Al Zach's personal home use of items that were billed and paid by

the city and how people such as Anthony Lukowiak, my nephew, and Nuzzi Massi, Gerard Massi and Anthony Juliano, my brother, would retrieve items for Mr. Zach. Also when Mr. Verderse was being questioned I helped him with his recollection and with certain other items.

(d) Osborn Carter. I discussed Osborn Carter's over billing schemes and how personal appliances and furniture from the Tobia Brothers were being paid for by the city.

(e) Alvin Zach. I explained Mr. Zach's involvement as set forth above, as well as his interaction with other people in this case. I personally convinced Anthony Lukowiak, my nephew, Anthony Juliano, my brother, and of course, Anthony Juliano, my son to be cooperating witnesses with the Government against Mr. Zach, and a variety of other people. My brother Anthony, and my nephew Anthony Lukowiak were put on call to testify in the Grand Jury against Mr. Zach, but apparently were not called. I have no way of knowing what that cooperation and my cooperation led to since all of this is generally kept secret by the Government. As far as I know Mr. Lukowiak and my brother Anthony are still cooperating with the Government.

(f) I gave other information to the Government concerning various political functions and how tickets were sold for the Mayor and Council, but I have no way of knowing what the progress of any of this cooperation led since I was not told about that by the Government.

Salvatore Juliano Cert., ¶ 4(a)–(f).[6]

The Government argued it made its determination not to file a motion for a downward departure after carefully evaluating the assistance offered by the Defendants; this evaluation revealed the Defendants "neither provided testimony or evidence at any proceeding, and neither contributed to the advancement of any criminal investigation." Sentencing Memorandum at 1.

The Government argued that "each point identified in the affidavit of defendant Salvatore Juliano" was considered during the review and responds: "[t]he actual assistance yielded by [Salvatore Juliano] on these areas ... differs from the proffered significance which he asserts [and] for which he claims credit." *Id.* at 4 n. 2. For example, while Salvatore Juliano asserted the Defendants' decisions to strike plea bargains resulted in the remaining defendants eventually pleading guilty, Juliano Cert., ¶ 3, "guilty pleas had already been entered by three of the original nine defendants ... [and] an agreement had already been signed by a fourth defendant." Sentencing Memorandum at 4–6 n. 2. Accordingly, the evaluation of assistance provided by Salvatore Juliano's decision to plea "was limited to consideration of the possibility that his assistance contributed to disposition regarding the cases of the remaining three defendants...." *Id.* The Government argued "these defendants' (sic) had substantial involvement in the Luchesse organized crime family and faced a myriad of other charges—some of which had already resulted in convictions in the state courts in New Jersey." *Id.* For these reasons, the Government concluded the entry of a plea by the Defendants did not contribute substantially to the remaining defendants' decisions to plea. *Id.*

The Government further argued Salvatore Juliano made no contribution to the investigation and prosecution of Augustine, Louis and Gerald Tobia (the "Tobia Brothers"). Sentencing Memorandum at 4–6 n. 2. The investigation of the Tobia Brothers "had been initiated and substantially completed *prior* to the Indictment in the present case—including the development of substantive source information and the completion of covert recordings." *Id.* (emphasis in original). The Government also argued Salvatore Juliano "cannot properly claim credit for the decision of defendant Verderese to plea given that the decision occurred *before* defendant

---

**6.** While Counsel for Anthony Juliano indicates the Government has debriefed his client, Roberts Cert., ¶ 4, Defendants have not submitted an Affidavit or Certification from Anthony Juliano setting forth the degree and quality of his coopera-

tion. In point of fact, as mentioned, it appears from remarks of counsel, Anthony Juliano was relying on the cooperation of his father in order to enjoy the benefit of a 5K1.1 downward departure motion. *See* Sentencing Tr., A. Juliano at 4.

Juliano agreed to plea." *Id.* (emphasis in original). Furthermore, while Salvatore Juliano sought credit for information provided regarding the activities of Al Lembo ("Lembo") and Al Zach ("Zach"), the Government argued "no prosecutions, charges or arrests or other law enforcement initiative regarding [Lembo or Zach] has at any time been accomplished as the result of information or other assistance provided by [Salvatore Juliano]." *Id.*

*Discussion*

■ A sentencing court may not depart from an otherwise applicable guideline range simply because its own sense of justice would call for it. *See Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996) ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline."). A district court may depart only when it finds "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ...," 18 U.S.C. § 3553(b), or when the Guidelines otherwise specifically provide for departure. *United States v. Barber,* 93 F.3d 1200, 1203 (4th Cir.1996).[7]

Section 5K1.1 provides:

*Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court *may* depart from the guidelines.

U.S.S.G. § 5K1.1 (emphasis added).

A district court has authority to depart from the Guidelines because of a defendant's "substantial assistance" only when the Government moves for departure. *Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992); *United*

*States v. Carrara,* 49 F.3d 105, 107 (3d Cir. 1995); *United States v. Love,* 985 F.2d 732, 734 (3d Cir.1993); *United States v. Higgins,* 967 F.2d 841, 845 (3d Cir.1992) ("We will affirm the district court's holding that it lacked the power to depart downward because of [defendant's] substantial assistance in the absence of a motion by the government."); *United States v. Gonzales,* 927 F.2d 139, 145 (3d Cir.1991); *United States v. Bruno,* 897 F.2d 691, 696 (3d Cir.1990); *see United States v. Kaye,* 65 F.3d 240, 242 (2d Cir.1995); *United States v. Emery,* 34 F.3d 911, 913 (9th Cir.1994).

■ The "[F]ederal prosecutor [has] the power to evaluate in the first instance the extent and significance of the defendants' assistance to governmental authorities." *Love,* 985 F.2d at 735. Constitutional and statutory challenges to the discretion afforded the Government under Section 5K1.1 have been "unanimously rejected." *Id.* at 735 n. 6 (citing *Higgins,* 967 F.2d 841; *United States v. Santos,* 932 F.2d 244, 255–56 (3d Cir.), *cert. denied,* 502 U.S. 985, 112 S.Ct. 592, 116 L.Ed.2d 617 (1991); *Gonzales,* 927 F.2d at 145; *Bruno,* 897 F.2d at 696; *United States v. Ortez,* 902 F.2d 61, 64 (D.C.Cir.1990); *United States v. Huerta,* 878 F.2d 89, 91 (2d Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990); *United States v. Ayarza,* 874 F.2d 647, 653 (9th Cir.1989), *cert. denied,* 493 U.S. 1047, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990)).

■ The Government's discretion in deciding whether to move for departure, however, is not unfettered. For example, if the Government's decision not to move for a downward departure was not "rationally related to any legitimate [G]overnment end," the Defendants may be entitled to relief. *Wade,* 504 U.S. at 186, 112 S.Ct. at 1844. In *Wade,* the Court also held "[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance

---

7. Section 3553(b) provides:
The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result

in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the [Guidelines], policy statements, and official commentary of the Sentencing Commission....
18 U.S.C. § 3553(b).

motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion." *Id.* at 186, 112 S.Ct. at 1844; *see United States v. Friedland,* 879 F.Supp. 420, 428 (D.N.J.1995), *aff'd,* 83 F.3d 1531 (1996). The *Wade* Court, however, cautioned:

> It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive. *See e.g., United States v. Redondo–Lemos,* 955 F.2d 1296, 1302–1303 (CA9 1992); *United States v. Jacob,* 781 F.2d 643, 646–647 (CA8 1986); *United States v. Gallegos–Curiel,* 681 F.2d 1164, 1169 (CA9 1982).... [A] defendant has no right to discovery or an evidentiary hearing unless he [or she] makes a "substantial threshold showing."

*Wade,* 504 U.S. at 186, 112 S.Ct. at 1844; *see Carrara,* 49 F.3d at 107; *Love,* 985 F.2d at 735 n. 6; *Friedland,* 879 F.Supp. at 428. Furthermore, even if a defendant is able to prove he or she provided substantial assistance to the Government, the defendant is not necessarily entitled to a downward departure, "for although a showing of assistance is a necessary condition for relief, it is not a sufficient one. The Government's decision not to move may have been based not on a failure to acknowledge or appreciate [the defendant's] help, but simply on its rational assessment of the cost and benefit that would flow from moving." *Id.* at 187, 112 S.Ct. at 1844; *Paramo,* 998 F.2d at 1221; *Higgins,* 967 F.2d at 845. Defendants bear the burden of proving the Government's refusal was for "an unconstitutional motive." *Wade,* 504 U.S. at 186, 112 S.Ct. at 1844; *Paramo,* 998 F.2d at 1220; *United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir.), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989).

■ The Defendants have not proffered evidence tending to show the Government based its decision not to move for a downward departure on an unconstitutional

ground or that the Government's decision was not rationally related to any legitimate Governmental interest. Accordingly, the Defendants' only viable argument is that the Government's decision not to move for a downward departure was made in bad faith and, therefore, violates the terms of the Plea Agreements.

### A. *The Plea Agreements*

■ While the Government enjoys discretion whether to move for a downward departure under Section 5K1.1, it can "bargain away" its discretion not to move for a downward departure. *United States v. Aderholt,* 87 F.3d 740, 742 (5th Cir.1996); *United States v. King,* 62 F.3d 891, 894 (7th Cir.1995) (Government's promise to move for a downward departure may be specifically enforced). A district court is vested with authority to determine whether the Government's refusal to move for a downward departure violates the terms of a plea agreement. *Kaye,* 65 F.3d at 242–43 (Defendants who have signed plea agreements "are entitled to a 'more searching' review a claim that the government should have, but did not, make such a motion."); *United States v. Leonard,* 50 F.3d 1152, 1157 (2d Cir.1995); *Carrara,* 49 F.3d at 107 (the Government is bound by an agreement with a defendant to file a 5K1.1 motion); *United States v. Knights,* 968 F.2d 1483, 1486 (2d Cir.1992); *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991), *cert. denied,* 502 U.S. 958, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991); *United States v. Khan,* 920 F.2d 1100, 1105 (2d Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991); *but see United States v. Forney,* 9 F.3d 1492, 1503 (11th Cir.1993) (Judicial review of Government decision not to file a 5K1.1 motion is appropriate only when unconstitutional motivation is alleged.).

■ "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *United States v. Bogusz,* 43 F.3d 82, 94 (3d Cir.1994), *cert.*

*denied,* —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995); *United States v. Badaracco,* 954 F.2d 928, 939 (3d Cir.1992); *United States v. Hayes,* 946 F.2d 230, 233 (3d Cir. 1991); *United States v. Moscahlaidis,* 868 F.2d 1357, 1361 (3d Cir.1989) (plea agreements are "contractual in nature").

Courts use a three-step analysis to review plea bargains: first, they determine the agreement's terms and the conduct alleged to violate it; second, they determine if the conduct violated the plea agreement; and third, if the plea agreement is violated, they determine the remedy.

*Bogusz,* 43 F.3d at 94 (citing *Hayes,* 946 F.2d at 233 (quoting *Moscahlaidis,* 868 F.2d at 1360)).[8] To determine whether the Government's decision not to move for a downward departure under Section 5K1.1 violates the Plea Agreements, requires a review of the terms and conditions of the Plea Agreements and a determination of what the Defendants reasonably understood when the Plea Agreements were entered into. *Bogusz,* 43 F.3d at 94; *Badaracco,* 954 F.2d at 939.

### B. *Analysis of the Plea Agreements*

As indicated, the Plea Agreements provided if the Defendants "provide substantial assistance in the investigation and prosecution of one or more persons who have committed a federal offense, the United States will … move the sentencing court, pursuant to Section 5K1.1 of the Sentencing Guidelines, to depart from the otherwise applicable guideline range." Plea Agreements at 4. The Plea Agreements, however, specifically provided "the decision to make the motion for a downward departure under Sentencing Guideline 5K1.1 is in the *sole discretion of the United States.*" *Id.* (emphasis added). The Plea Agreements, moreover, warned the

Defendants "that no infrequently information provided by a cooperating individual turns out to be merely cumulative, and therefore of little relative significance." *Id.*

The Government has bargained away a degree of its discretion by agreeing to move for a downward departure under Section 5K1.1 of the Defendants "provide substantial assistance in the investigation and prosecution of one or more persons who have committed a federal offense." *See United States v. Hernandez,* 17 F.3d 78, 81 (5th Cir.1994); *United States v. Wilder,* 15 F.3d 1292, 1297 (5th Cir.1994). In substance, however, the Government has bargained away little because, as indicated, the Government has retained the "sole discretion" to decide whether to make the 5K1.1 motion. Plea Agreements at 4; *see United States v. Hawley,* 93 F.3d 682, 690–91 (10th Cir.1996) (under plea agreement, decision whether to file a motion for substantial assistance resides in the "sole and exclusive" discretion of the prosecutor); *King,* 62 F.3d at 894 (Government retained sole discretion of determining whether assistance was substantial); *United States v. Jones,* 58 F.3d 688, 691 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 430, 133 L.Ed.2d 346 (1995) (Government retained discretion to determine whether assistance was substantial); *United States v. Epley,* 52 F.3d 571, 580 (6th Cir.1995) (Government retained complete discretion over whether to request a downward departure; "[i]t would go against the terms of the plea agreement to find the Government was obliged to ask for such a departure."); *see United States v. Sparks,* 20 F.3d 476, 478 (D.C.Cir.1994). In other words, while the Government obligated itself to move for a downward departure if the Defendants provided substantial assis-

---

**8.** The Second Circuit has devised a procedure for addressing a claim the Government has acted in bad faith in refusing to move for a downward departure. Under the Second Circuit procedure, when a defendant makes a claim of bad faith, the Government

> may rebut [defendant's] allegation by explaining its reasons for refusing to depart. The defendant must then make a showing of bad faith "to trigger some form of hearing on that issue." *Khan,* 920 F.2d at 1106. We did not detail the kind of hearing that is required; whether it be merely oral argument or should

include a formal evidentiary hearing is a matter that lies within the sound discretion of the district court.

*Knights,* 968 F.2d at 1487. In the instant case, the Defendants have been given leave to brief the issue of bad faith and oral argument has been heard. As indicated, the Government has "explained its reasons for refusing to depart" and the Defendants have only made generalized allegations of bad faith. Accordingly, even under the Second Circuit procedure, the Motion to Compel would be denied.

tance, it retained the power to determine if the assistance provided by the Defendants was substantial, *see e.g., Jones,* 58 F.3d at 691, although this power must be exercised in good faith.

In *U.S. v. Spiropoulos,* 976 F.2d 155 (3d Cir.1992), the Circuit discussed the contractual aspects of a plea agreement. It noted the *Spiropoulos* plea agreement referred "only to defendant's 'good-faith' effort to render substantial assistance as the trigger for the Section 5K1.1 motion." *Id.* at 161. It further observed that: "We note at the outset that the [plea] [a]greements did no more than require the government to make a Section 5K1.1 motion, which it did." *Id.* It also observed that the plea agreement explicitly reserved to the Government the right to inform the sentencing judge of the nature and extent of the cooperation by Spiropoulos as well as all other information of favorable or unfavorable relevant to sentencing. *Id.* at 162.

The Plea Agreements concerning the Defendants are distinct from the agreement in *Spiropoulos.* As mentioned, in *Spiropoulos* all that was necessary to trigger the obligation to file a 5K1.1 motion was a "good-faith" effort to render substantial assistance. In this case, as explained earlier, the decision to file a 5K1.1 motion rested in the sole discretion of the Government upon a determination the Defendants provided substantial assistance. Plea Agreements at 4. The Plea Agreements also advised the Defendants that "not infrequently information provided by a cooperating individual turns out to be merely cumulative, and therefore of little relevant significance." *Id.* In reviewing the plea bargains between each of the Defendants and the Government, it is apparent the terms of the Plea Agreements obligated the Government to do little more than make a good-faith effort to review the attempts at cooperation by each of the Defendants. The crucial point is that the Plea Agreements preserved the discretion of the Government with respect to the filing of 5K1.1 motions. Each Defendant understood this and entered into the Plea Agreement on that basis.

In *Jones,* the plea agreement provided if the defendant produced information or testi-

fied for the Government, the United States Attorney would inform the "Departure Committee of the United States Attorney's Office" of the "nature and extent" of the defendant's cooperation. *Jones,* 58 F.3d at 690. The plea agreement further provided: "Should the Departure Committee ... after evaluating the nature and extent of [the defendant's] cooperation, determine that [the defendant] has provided substantial assistance ... then the [Government] will file a [5K1.1] motion...." *Id.* The "Departure Committee" determined the defendant did not provide substantial assistance; accordingly, the Government did not file a 5K1.1 motion. *Id.*

The defendant in *Jones,* like the Defendants in the instant case, moved to compel the Government to file a 5K1.1 motion. 58 F.3d at 690. The defendant argued "he had fulfilled his part of the bargain by providing every assistance that the Government asked of him, the Government was[, therefore,] obligated to file the [S]ection 5K1.1 'substantial assistance' motion." *Id.* at 690. The Government responded "that under the terms of the plea agreement, the Departure Committee retained complete discretion to determine whether [Defendant's] assistance was 'substantial.'" *Id.* The D.C. Circuit held:

The plain language of the plea agreement clearly supports the Government's interpretation. Paragraph 7 obligated the Assistant U.S. Attorney handling the case to inform the Departure Committee of [defendant's] assistance, and it required the U.S. Attorney's Office to file a section 5K1.1 motion only if that Committee "[s]hould ... determine that [he] ha[d] provided substantial assistance." The agreement does not obligate the Departure Committee to make a finding of "substantial assistance" if [the defendant] fully cooperates with the prosecution. In fact, ... the agreement disclaims any such obligation by stating that "the United States Attorney's Office of the District of Columbia retains its discretion concerning whether to file a [substantial assistance] motion."

*Jones,* 58 F.3d at 691; *see Aderholt,* 87 F.3d at 742; *Sparks,* 20 F.3d at 478.

The language of the Plea Agreements is straightforward. Defendants were specifically cautioned that even if they made "every effort to be completely cooperative," the Government was not obligated to move for a downward departure. Plea Agreements at 4. The Government, moreover, has fulfilled its obligation to provide an accurate assessment of the value of the assistance provided by the Defendants and their cooperativeness. At the First Salvatore Juliano Sentencing Hearing, the Government indicated that while Salvatore Juliano has attempted to "give some assistance," Tr. at 7, no prosecutions, indictments or arrests have resulted from his assistance. *Id.* at 8. Salvatore Juliano has not "provided testimony or evidence at any proceeding," nor has he "contributed to the advancement of any criminal investigation." Sentencing Memorandum at 1.[9] As indicated, the Government has responded to each of Salvatore Juliano's assertions and has provided an accurate assessment regarding the value of the Defendants' assistance.

Finally, Counsel for Salvatore Juliano argued that he was misled by the Government into believing a Section 5K1.1 motion would be forthcoming. First Sentencing Tr., S. Juliano at 15. This argument is unavailing. Any communications indicating the Government was happy with the Defendants' cooperation, did not modify the basis of the Plea Agreements. *See United States v. Resto,* 74 F.3d 22, 26 (2d Cir.1996). The Plea Agreements specifically provide that they constitute the "full and complete" agreements between the Government and the Defendants. Plea Agreements at 5. The Plea Agreements further provide that no "additional promises, agreements, or conditions ... will be entered into unless in writing and signed by all parties." *Id.* The Government retained the "sole discretion" to decide whether to make a Section 5K1.1 motion.

### C. *The Discretion of the Court*

As indicated, a court has authority to depart from the Guidelines because of a defendant's "substantial assistance" when the Government moves for departure. It does not follow, however, that if the Government files a 5K1.1 motion a court is obligated to grant a downward departure. A sentencing court retains the discretion to sentence criminals within the Guideline range. *Spiropoulos,* 976 F.2d at 159–63. "Having set the ... 5K1.1 downward departure process in motion, the [G]overnment cannot dictate the extent to which the court will depart." *Id.; see United States v. Conway,* 81 F.3d 15 (1st Cir.1996); *United States v. Organek,* 65 F.3d 60 (6th Cir.1995); *U.S. v. King,* 53 F.3d 589 (3d Cir.1995); *Carrara,* 49 F.3d at 107. For example, if the Government makes a 5K1.1 motion in a case where the defendant's assistance was insignificant, the sentencing court has the discretion to deny the Government's motion and sentence the defendant within the Guidelines. *Spiropoulos,* 976 F.2d at 161–64.

As explained in *Spiropoulos,* "[t]he critical point is that the Guidelines preserve the discretion of the district court with respect to the extent of ... 5K1.1 departures." *Id.* at 162. Indeed, the Circuit rejected the argument in *Spiropoulos* that a district court could not consider the "fortuitous events beyond [a defendant's] control" to measure cooperation. The Circuit acknowledged that the good-faith cooperation efforts by a defendant which led to the apprehension of an international drug lord or a local kingpin

---

9. These comments concerning the absence of arrests, indictments, prosecutions, or, indeed, convictions were understood in connection with the obligation of the court to evaluate "the significance and usefulness of the defendant's assistance," U.S.S.G. § 5K1.1(a)(1), as well as "the nature and extent of the defendant's assistance." *Id.* at (a)(3). It is clear, however, cooperation need not result in a charge, an arrest, an indictment, a prosecution or a conviction in order to grant an appropriately filed 5K1.1 motion. Assistance in and of itself may be sufficient.

In any event, it is necessary that, upon the filing of a 5K1.1 motion, a court determine an appropriate departure by considering the nature of a defendant's cooperation. "The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis." Background to U.S.S.G. § 5K1.1. Accordingly, discretion under Section 5K1.1 necessarily involves the consideration of "an individualized qualitative examination of the incidents of the defendant's cooperation...." *U.S. v. King,* 53 F.3d 589, 591 (3d Cir.1995).

may well be entitled to a greater departure than a defendant whose good-faith efforts led to the apprehension of a low-level courier or no apprehension at all. *Id.* at 162. Succinctly stated: "The language of [Section] 5K1.1 directs a sentencing court to gage the extent and quality of the defendant's cooperation in deciding how many levels to depart downward in exchange for this cooperation." *King,* 53 F.3d at 591.

> The court is charged with conducting a judicial inquiry into each individual case before independently determining the propriety and extent of any departure in the imposition of sentence. While giving appropriate weight to the government's assessment and recommendation, the court must consider all other factors relevant to this inquiry.

*Id.* at 591 (quoting with approval *United States v. Johnson,* 33 F.3d 8, 10 (5th Cir. 1994)). Accordingly, the exercise of discretion concerning a 5K1.1 motion must center on the nature and extent of cooperation which must be evaluated on an individual basis; such consideration "does not admit of any sentencing 'practice.'" *Id.* at 590. In this regard, a sentencing court may consider "the significance and usefulness of the defendant's assistance, taking into consideration the Government's evaluation of the assistance rendered...." U.S.S.G. § 5K1.1.

"The language of [Section] 5K1.1 directs a sentencing court to gauge the extent and quality of the defendant's cooperation in deciding how many levels to depart downward in exchange for this cooperation.... A proper exercise of the district court's discretion under [Section] 5K1.1 ... involves an individualized qualitative examination of the incidents of the defendant's cooperation...." *King,* 53 F.3d at 591. "Obviously, a defendant's assistance is generally more 'useful' if it leads to a conviction then if the Government never uses the information once it is acquired." *Spiropoulos,* 976 F.2d at 161. In this regard the Circuit has explained that "the Guidelines specify that [a sentencing] court is specifically obligated to consider the Government's evaluation of the usefulness of that [cooperation]...." *Spiropoulos,* 976 F.2d at 160–61.

■ In the instant case, the Defendants have attempted to cooperate with the Government; their assistance, however, has been negligible. *See* Sentencing Memorandum at 4–6 n. 2. Had a 5K1.1 motion been made, absent additional evidence of assistance, it would have been appropriate to deny the motion and sentence the Defendants within the Guidelines.

*Conclusion*

For the reasons set forth above, the Motion to Compel is denied.