

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-1995

# USA v Carrara

Precedential or Non-Precedential:

Docket 94-5204

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"USA v Carrara" (1995). *1995 Decisions*. Paper 63.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/63

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5204


UNITED STATES OF AMERICA

V.

NICHOLAS CARRARA,
                    Appellant


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Criminal No. 91-00537-2)


Submitted Under Third Circuit LAR 34.1(a)
December 1, 1994

Before:  HUTCHINSON and NYGAARD, Circuit Judges
     and SEITZ, Senior Circuit Judge

(Opinion Filed: February 27, 1995)


MICHAEL N. PEDICINI, ESQUIRE
Courthouse Plaza
60 Washington Street
Morristown, NJ 07960
Attorney for Appellant

FAITH S. HOCHBERG, ESQUIRE
United States Attorney
GLENN J. MORAMARCO, ESQUIRE
Assistant United States Attorney
970 Broad Street
Newark, NJ 07102
Attorneys for Appellee

NYGAARD, Circuit Judge.

Appellant, Nicholas Carrara, served as president of Omega Network Systems, Inc., which provided various labor unions, municipalities, and other companies with administrative services for health care claims. Carrara engaged in two unrelated fraudulent schemes for which he was charged: a Woodbridge Township embezzlement scheme and a Teamsters kickback scheme. During his trial, Carrara pleaded guilty to a one-count information charging him with a dual conspiracy: (1) making kickback payments to one Zingone; and (2) misappropriating $650,000 in Woodbridge Township insurance funds.

On appeal, Carrara contends that the government's refusal to move for a downward departure under the United States Sentencing Guidelines § 5K1.1 was punitive and violated his constitutional rights; that the government's failure to recommend a departure breached the government's plea agreement with him; that even though he breached the agreement, it should not be nullified because the government still benefitted from his cooperation; and, that the disparity between the sentence imposed on Carrara and the sentences imposed on his co-defendants makes his sentences unlawful. On these issues, we will affirm. On Carrara's claim that the district court failed to make the required factual findings to support its restitution order, however, we will reverse and remand.

## I.

Carrara entered into a cooperating plea agreement with the government that required him to disclose truthfully all information on all matters into which the United States Attorney's Office inquired. Carrara also agreed to provide truthful testimony to the Grand Jury and at trial. Additionally, he agreed that if he gave any materially false information or testimony, his plea agreement would be void. For the government's part, it agreed that if Carrara fully complied with the terms of the agreement, it would file a § 5K1.1 motion, seeking a downward departure from Carrara's sentencing guideline range.

Carrara cooperated with the government and gave information by which the government was able to convict several individuals. That is undisputed. Nonetheless, the government did not file a § 5K1.1 motion for a cooperation departure, and at sentencing Carrara received no benefit for his cooperation. Carrara's departure issues are resolved against him by an affidavit he filed, which he now admits was materially false, because in filing it he breached his plea agreement and relieved the government of its obligations.

## A.

The government had filed a motion to disqualify Carrara's counsel based upon a conflict of interest. Carrara filed a cross motion seeking to withdraw his guilty plea, requesting that the court order the U.S. Attorney's Office to recuse, and urging the court to dismiss the indictment against

him.  In support of his motion, Carrara filed an affidavit stating that although he pleaded guilty he was actually innocent. In his affidavit, Carrara accused the government of trying to pressure him into lying when it did not like the information he provided.  Based upon his affidavit, his newly alleged innocence and the government's misconduct, Carrara sought to withdraw his guilty plea.  This affidavit, however, created more problems for Carrara than it solved and placed Carrara in a real dilemma: if the affidavit were true, his earlier trial testimony was perjury; if the trial testimony were true, the affidavit was perjury.  In sum, Carrara is "hoisted by his own petard."

Because of the several twists and turns of events, the district court held what amounted to a full Rule 11 hearing when Carrara reaffirmed his guilty plea.  During the hearing, Carrara affirmed on the record that he knew what he was doing and that his plea was voluntary; that he understood the penalties he was facing, and he affirmed the factual basis for his guilty plea. The government also recorded its position on Carrara's decision to reaffirm his guilty plea and its decision not to file a § 5K1.1 motion for a downward departure for Carrara.[1]

The district court pointed out that when Carrara reaffirmed his guilty plea, he was aware that the government was not going to file a § 5K1.1 motion.  The court added that even if

---

[1].  The government did agree to take the position that, even despite the false affidavit, Carrara's equation should not be enhanced two points for obstruction of justice and in fact should be reduced two levels for acceptance of responsibility.

the government had filed the motion, "I would have denied it, for it is within my discretion to do so."  At issue before us is whether the government's refusal to file a § 5K1.1 motion is a breach of its agreement with Carrara.  What Carrara seeks is specific performance of that agreement.

B.

It is axiomatic that it is within the government's discretion whether to seek a § 5K1.1 departure for substantial cooperation.  Moreover, a claim by a defendant that he has "merely provided substantial assistance will not entitle a defendant to a remedy...or an evidentiary hearing."  Wade v. United States, 112 S.Ct. 1840, 1844 (1992) (holding that courts have authority to review and grant a remedy to defendants who can show the prosecutor's refusal to file a substantial-assistance motion "was based upon an unconstitutional motive."  Id.) Nonetheless, as in this case, once the government makes an agreement with a defendant to file a motion, it is bound by the terms of the agreement.  It is a simple matter of contract law. United States v. Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989).  What Carrara seems to ignore, however, is that the agreement works both ways.  Not only must the government comply with its terms and conditions, but so must he.  Here it is undisputed that Carrara violated the agreement, his allegations of pressure from the government notwithstanding, because he supported his motion to withdraw his guilty plea with a materially false affidavit.

Carrara seeks to absolve himself of this (or these) falsehoods by contending that he filed the affidavit upon advice of ineffective counsel. This may be a reason, but it is not an excuse. The fact of the matter is -- he lied. Having done so, he cannot come before the court with unclean hands and request that the government now be ordered to perform his version of equity. Specific performance requires that the court enforce every portion of the agreement, which most specifically here includes the government's right to withhold its motion because Carrara gave false testimony.

The plea agreement explicitly states:

> Nicholas Carrara shall truthfully disclose
> all information concerning all matters about
> which this office inquires of him. Nicholas
> Carrara shall make himself available at all
> reasonable times requested by representatives
> of the Government and shall truthfully
> testify in the grand jury and at any trial as
> to any subject about which he is questioned.

Appendix, 15 (emphasis added). It further provides:

> Should Nicholas Carrara withdraw from this
> agreement . . . or should it be established
> that Nicholas Carrara has given materially
> false, incomplete, or misleading testimony or
> information or otherwise has violated any
> provision of this agreement, the agreement
> and its benefits to Nicholas Carrara shall be
> null and void.

Appendix, 16 (emphasis added). Finally, the agreement gives an

unambiguous warning that if Carrara were to provide misleading or false testimony, he would be prosecuted for perjury. This underscores a basic premise of the plea agreement; that is, he

must provide the government with truthful and reliable information that will aid it.

                                    C.

        We also reject Carrara's argument that it is unfair for the government to reap the benefits of the plea agreement and avoid its responsibilities to him.  In short, given Carrara's breach, the government no longer has any responsibility to request downward departure.  Moreover, to the extent that the government benefitted from information Carrara provided, the government was also put in the unenviable position of having to ascertain what aspects of Carrara's testimony were true and what were lies.  Carrara entered into the plea agreement and then violated it.  He must now endure the results of his dishonesty.

                                    D.

        For all of the foregoing, we conclude that the government's actions in refusing to file a § 5K1.1 motion were proper.  Where, as here, the government is not controlled by an agreement, it has the power but not the duty to file a § 5K1.1 motion.  <u>Wade v. United States</u>, 112 S.Ct. at 1843. Where, as here, the assistance rendered is flawed because of the defendant's dishonesty, the government is fully justified in not filing a motion.[2]

---

[2].  Carrara also contends that the disparity between his sentence and that imposed upon others is contrary to the policy of the sentencing guidelines, and requests that his sentence be vacated and the matter remanded for resentencing.  We will affirm on this issue as well.  Carrara was sentenced to a 46-month term of imprisonment.  This is within the sentencing guideline range of 41 to 51 months, and a sentencing disparity among co-defendants is not a proper basis upon which to base a departure from the

II.

Finally, appellant contends that the district court erred by ordering him to pay $650,000 in restitution. He does not challenge the victims' losses, but contends only that the court's award is not supported by a finding that he is financially able to pay restitution. On this issue the government concedes error, and after careful examination of the record we agree that the district court erred. See United States v. Palma, 760 F.2d 475, 480 (3d Cir. 1985).

Historically restitution has occupied a prominent penological position. It predates fines and prison, and in the earliest penal codes, it was always awarded to the victim of a property crime -- usually in addition to punishment.[3] Restitution has customarily been awarded to answer various penological concerns. It is primarily restorative and is supposed, at least partially, to replace victims in the financial position they occupied before the offense was committed against them. See generally S.Rep No. 532, 97th Cong.2d Sess. 30, reprinted in 1982 U.S.C.C.A.N. 2515, 2536-39. In that sense, restitution is also remonstrative, and, where indicated, will require that offenders disgorge their illgotten gains. United States v. Woods, 986 F.2d 669, 678-81 (3d Cir. 1993). Then too,

(..continued)
guidelines. In sum, there is simply no support for appellant's position on this issue.

[3]. The Code of Hammurabi, King of Babylon ca. B.C.E. 2285-2242, imposes the death sentence for 27 crimes, and restitution sentence for over 50 crimes. Trans. C.H.W. Johns, M.S., Edinburgh, (1905).

restitution is rehabilitative because it permits or indeed requires that offenders personally face what they have done and, at least partially, atone for their legal transgressions by direct action in the form of a positive personal performance.[4] Congress requires, however, that when restitution is indicated the district court consider both the loss sustained by the victim and the offender's financial resources, financial needs, and present and potential earning ability. 18 U.S.C. § 3664(a).

The question whether the district court erred here is very close, however, because at sentencing defense counsel introduced no financial evidence of Carrara's ability to pay. He argued, nonetheless, that Carrara did not have any personal assets to make restitution. Significantly, he also informed the court that Carrara had another attorney assisting in filing claims against insurance companies that provide coverage to Omega Network Systems, seeking funds from them to repay the embezzlement victims. By letter, Carrara's civil attorney informed the district court that the insurance proceeds "arguably, may well provide [Woodbridge] with restitution." He added that there also "exists a reasonable probability that a recovery against [other] third party defendants...will be obtained."

The district court then ordered Carrara to pay restitution, but added that Carrara would be credited for

---

[4]. See Richard E. Laster, Criminal Restitution: A Survey of its Past History and an Analysis of its Present Usefulness, 5 U. Rich. L.Rev. 71, 80-82 (1970).

payments made by insurance companies or third parties.  In doing so, it appears that the district court may well have appropriately considered the aims and goals of restitution. Moreover, although New Jersey law follows the general rule that "an insurer may not contract to indemnify an insured against the civil consequences of his own wilful act,"  Vargas v. Hudson County Bd. of Elections, 949 F.2d 665, 673 (3d Cir. 1991) quoting Ambassador Ins. Co. v. Montes, 388 A.2d 603, 606 (1978), it, nonetheless, has no public policy prohibiting an indemnity in the unique circumstances presented here, if Carrara does not benefit and an innocent third person will receive the protection afforded by the insurance.  Ambassador, 388 A.2d at 606-607 (1978).

The difficulty is that under the court's restitution order, if Carrara were not successful with these third-party payers, he would be liable for the entire amount.  Defense counsel argued that Carrara is currently indigent.  That, however, is not determinative.  Congress recognized that indigency may be temporary and that even an indigent offender may be compelled to pay restitution, if necessary, during the period of up to five years after incarceration.  18 U.S.C § 3572(d). Hence, the district court was required to make the necessary factual findings on all factors bearing on Carrara's current and future ability to pay it.  United States v. Logar,  975 F.2d 958, 961-64 (3d Cir. 1992).

The restitution order is not adequately supported here because the district court did not make specific findings whether third-party payers exist, which the record suggests is so, or

whether Carrara is able to pay without them, which the records suggests is not so. Moreover, if restitution or its amount is to be conditioned upon payments from insurance companies or third party payers, or if Carrara's liability has an upper limit, the order must expressly say so. Finally, the court must structure the award so that no portion of Carrara's restitutionary burden is relieved by payments from insurance proceeds. Ambassador 388 A.2d at 606-607. Because the district court's order is not so conditioned, limited or supported, we will remand the cause and allow the district court to make the necessary inquiries and findings.

### III.

In sum, we affirm the district court's sentence except as to restitution. We will vacate the portion of Carrara's sentence awarding restitution and remand the cause to the district court, giving it the opportunity to hear evidence and make factual findings sufficient to support the order at issue, or in the alternative, to enter a new order in an amount and upon conditions it deems both appropriate and not inconsistent with this opinion.