

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2003

# USA v. Lamplugh

Precedential or Non-Precedential: Precedential

Docket No. 02-2001

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Lamplugh" (2003). *2003 Decisions*. Paper 393.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/393

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 30, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2001

UNITED STATES OF AMERICA
*Appellant*

v.

THERESA L. LAMPLUGH,

On Appeal from the United States District Court
for Middle District of Pennsylvania
(D.C. Crim. No. 95-cr-00169-2)
District Chief Judge: Hon. Thomas I. Vanaskie

Argued March 11, 2003

Before: SLOVITER, NYGAARD, and ALARCON,*
*Circuit Judges*

(Filed: June 30, 2003)

Wayne P. Samuelson, Esq. (Argued)
Office of the United States Attorney
240 West Third Street
Suite 316
Williamsport, PA 17791

*Attorney for Appellant*

*Honorable Arthur L. Alarcon, Senior Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

Stephen C. Smith, Esq. (Argued)
Smith Law Offices
226 East Water Street
Lock Haven, PA 17745

*Attorney for Appellee*

---

## OPINION OF THE COURT

---

ALARCON, *Circuit Judge.*

The United States appeals from the district court's order granting a new trial for Theresa L. Lamplugh ("Mrs. Lamplugh") because of the alleged ineffective assistance of her trial counsel. We reverse because we conclude that by providing her attorney with fraudulent documents that she intended to be used at trial to create a reasonable doubt of her guilt, Mrs. Lamplugh forfeited her right to claim ineffective assistance of counsel.

I

The facts in this case are undisputed. Theresa and Harry Lamplugh operated a gun show promotion business in Pennsylvania and neighboring states. The business generated a cash flow from gate receipts and display table rentals that aroused the suspicions of the Bureau of Alcohol, Tobacco, and Firearms ("BATF") and the Internal Revenue Service ("IRS"). As a result of the facts uncovered by a joint BATF and IRS investigation, a federal search warrant was issued. It was executed at the Lamplughs' house on May 25, 1994. Numerous financial documents and firearms were seized during the search. The BATF and IRS subpoenaed the Lamplughs' bank records. They also contacted owners of the sites where the Lamplughs held gun shows in 1991 and 1992.

On June 29, 1995, the grand jury for the United States District Court for the Middle District of Pennsylvania returned a twenty-one-count indictment, accusing Mrs. Lamplugh, her husband, and her stepson of firearms-related offenses. On April 16, 1997, the grand jury returned

a superseding twenty-five-count indictment. Counts twenty-four and twenty-five charged Mrs. Lamplugh and her husband with the willful failure to file federal income tax returns for 1991 and 1992, in violation of 26 U.S.C. § 7203.[1] The defendants moved to sever the felon-in-possession counts. The district court granted the motion and ordered that the matter proceed in a bifurcated trial, with the tax charges to be tried first. Mr. Ellenbogen represented Mrs. Lamplugh at trial. Mr. Lamplugh was represented by Robert Sanders.

On October 29, 1998, four days before the trial was scheduled to begin and four-and-a-half years after the IRS and BATF searched the Lamplughs' house pursuant to a warrant, Mr. and Mrs. Lamplugh delivered a box of documents to their attorneys. The Lamplughs told their attorneys that the BATF and IRS had overlooked the box during a search of their residence, and that "they had only just found the box." The box contained what appeared to be copies of some of the Lamplughs' 1991 and 1992 tax returns and financial records ("the disclosed documents"). Mr. Ellenbogen informed the defendants that in order to use these documents at trial, he would be required to turn copies over to the prosecutor pursuant to Rule 16 of the Federal Rules of Criminal Procedure. The Lamplughs and their attorneys agreed that if the Government introduced the documents at trial, Mrs. Lamplugh could preserve her credibility for the second phase of the trial by avoiding having to testify regarding the tax charges.

The trial began as scheduled. Although the defense attorneys had possession of the box of documents during

---

1. 26 U.S.C. § 7203 reads in pertinent part:

> Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined [ ] or imprisoned not more than 1 year, or both, together with the costs of prosecution.

4

the first two days of trial, they did not disclose them to the Government until the third day of trial. Thus, the Government was unaware of the existence of the box of documents during the presentation of its evidence on November 2 and 3, 1998. The Government presented the following evidence on November 2 and 3, 1998 to prove that the Lamplughs willfully failed to file tax returns in 1991 and 1992. The Lamplughs conducted twenty-eight gun shows in 1991 and twenty-nine in 1992. Figures from the subpoenaed bank records, and documents seized from the Lamplughs' home pursuant to a search warrant, reflected that the Lamplughs' gun show operations in 1991 and 1992 produced sufficient income that required them to file federal tax returns.

An IRS employee testified that the IRS Philadelphia Service Center ("the Center") had no records of any federal tax returns filed by the Lamplughs for 1991 and 1992. The Center's records disclosed that the Lamplughs had filed federal income tax returns in previous years.

Barry Bittenbender, an IRS agent, testified that, in searching the Lamplughs' home, IRS agents did not find any copies of the 1991 or 1992 federal income tax returns or records reflecting the Lamplughs' income for these years. Agent Bittenbender also testified that during the investigation, Mr. Lamplugh stated that federal tax returns were not filed in 1991 and 1992 because he did not receive any income during those years.

Sue Cook, the Lamplughs' accountant, testified as a Government witness. She prepared the tax returns for each of the Lamplughs from 1984 to 1988, and for Mrs. Lamplugh only in 1989. Ms. Cook did not prepare returns for either Mr. or Mrs. Lamplugh for 1991 or 1992. Ms. Cook also testified that the Lamplughs provided her with a detailed accounting of their expenditures. Ms. Cook stated, however, that the Lamplughs had no written records of their income, and would inform her of the total of their yearly income figures in writing or orally over the phone.

The Government also introduced an application for a real estate loan presented by the Lamplughs in 1992 to the Commonwealth Bank. This credit application was obtained

from the Commonwealth Bank in response to a Government subpoena. An assistant loan officer of the Commonwealth Bank testified that the Lamplughs provided her with a handwritten copy of their 1989 Schedule C[2] that indicated a yearly total of $61,793.00 in gross receipts for their business and a profit of $31,034.00. The computer-generated Schedule C form submitted by Ms. Cook for 1989 reflected that the Lamplughs' business had gross receipts of $5,200.00 and a loss of $151.00. The Lamplughs also claimed on their loan application that they earned $15,000 a month in 1992.

On November 4, 1998, immediately after court was called to order on the third day of trial, Mr. Ellenbogen told the court that Mr. Lamplugh had presented him with a box containing the Lamplughs' tax documents and financial records. Mr. Ellenbogen stated to the court that, while he had not "finished fully inventorying, let alone Xeroxing and making copies of [the] records" for the prosecutor, the defense intended to use the contents of the box to cross examine the revenue agent who was to be the Government's final witness. The court recessed the proceedings for the day so that the prosecution could examine the contents of the box. The trial resumed on November 5, 1998.

After receiving the disclosed documents from Mr. Ellenbogen, the Government recalled Agent Bittenbender to the stand. He testified that an examination of the disclosed documents caused him to increase his estimate of the Lamplughs' gross income by approximately $10,000 for 1991 and $15,000 for 1992. He also testified that included in the disclosed documents were what appeared to be partial or completed copies of federal, state and local income tax returns for the year 1991, and local income tax returns for 1992.

Kimberly Kalacinski, a Wellsboro tax official, testified that the Lamplughs were on a list of taxpayers who did not file *local* tax returns for 1991 and 1992. She stated that she

---

2. A Schedule C is a tax form submitted to the IRS with an individual's tax return that shows the net profit or loss from a sole proprietorship. *Frequently Asked Questions*, Internal Revenue Service (2002), *available at* http://www.irs.gov/faqs/page/0,,id%3D15923,00.html.

searched the local records but could not find any tax returns for 1991 or 1992. She also explained that an income tax return form would be mailed to the taxpayer in either December of each tax year or early January the following year. The Government presented certified records from the Pennsylvania Department of Revenue that indicated the Lamplughs had not filed state tax returns for 1991 and 1992.

In contrast to Mr. Lamplugh's prior statement to Agent Bittenbender that he didn't file tax returns in 1991 and 1992 because he did not receive any income during those years, the theory of the defense at trial was that the Lamplughs had filed federal income tax returns in 1991 and 1992 and the IRS misplaced or lost them.

Mr. Lamplugh called Thomas Griffith to testify as a defense witness. Mr. Griffith was a distant cousin of Mr. Lamplugh and had been interviewed in 1995 by BATF agents regarding the Lamplughs' gun business. Mr. Griffith testified that he and his family attended two of the Lamplughs' gun shows and were not charged admission. On cross-examination he testified that during the gun show he saw "somebody up front collecting money" from "patrons paying cash."

Shelley Davis, also testified as a defense witness. She stated that she had worked as an IRS historian from 1988 to 1995 and had written a book about the IRS. Ms. Davis testified that, in the Spring of 1989 she researched the way tax returns were sent through the Center and interviewed its director and a number of its employees. After her visit in 1989, Ms. Davis did not return to the Center, although she remained in contact with a few of its employees. Ms. Davis testified regarding the Center's processing methods of tax returns. Her research included a study of the instances in the mid 1980's when the IRS lost tax returns. Ms. Davis testified that she found that the Center encountered problems in processing tax returns in late 1984 and 1985 when it implemented an untested new computer software program. She further stated that after the problems in 1984 and 1985, "there was absolutely no change in any procedural handling of tax returns." Ms. Davis also testified

that she did not discuss in her book whether the same problems still existed in 1991 and 1992.

Mr. Sanders introduced a video taken by the BATF of the Lamplughs' property during the execution of the search warrant on May 24, 1994. The video depicted a box sitting on a shelf in the Lamplughs' garage. Scott Endy, the case agent for the BATF during the execution of the search warrant, testified that he did not look in that box.

Agent Bittenbender testified during his cross-examination by Mr. Ellenbogen that the disclosed documents actually increased the Lamplughs' tax liability. One of the tax returns found in the box contained a handwritten note that stated, "I'm too sick to mess with this, can't afford to have anyone to do it. We have our records, so please contact us if there's any problem." During the cross-examination of Agent Bittenbender, Mr. Ellenbogen introduced copies of various mortgage and interest reports allegedly filed with the IRS for the years 1991 and 1992. These copies were part of the disclosed documents. At the request of the defense, the court informed the jury that pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the defense was only obligated to turn over documents to the jury that it planned to use at trial. Mr. Ellenbogen also referred to the disclosed documents during his cross-examination of Kimberly Kalacinski, a Wellsboro tax official.

Mr. and Mrs. Lamplugh did not testify during the bifurcated proceedings regarding the alleged violations of § 7203.

On November 10, 1998, the attorneys presented their arguments to the jury. In his initial argument, the prosecutor asserted that the Lamplughs' failure to file federal income tax returns for the years 1991 and 1992 was willful. He stated that "[w]ith respect to willfulness, key exhibits are No. 245, the credit application, 252, 253 and 254. 252, 253 and 254 are documents that came from the box of exhibits that purport to be copies of Local, State and Federal tax returns for 1991 and 1992." The prosecutor described the alleged copies as "dummy returns." He also pointed out in his rebuttal argument that the copies of the fraudulent federal tax returns disclosed by the defense for

tax year 1991 were dated March 19, 1991 and the purported local 1991 tax returns were dated April 3, 1991. Tax returns for that year would not have been due until early 1992. The prosecutor further argued that each purported copy of the local tax returns for 1992 was dated April 20, 1992.

On November 10, 1998, the jury found Mr. and Mrs. Lamplugh guilty of failing to file a federal income tax return for the years 1991 and 1992.[3] The trial then proceeded to the guilt phase of the firearms charges. Mrs. Lamplugh testified in her own defense and was acquitted by the same jury.

## II

Mrs. Lamplugh appealed from the judgment of conviction, *United States v. Lamplugh*, Civ. No. 95-cr-00169-2 (M. D. Pa. Mar. 25, 1999), claiming, *inter alia*, that Mr. Ellenbogen "provided ineffective assistance by producing—during trial—newly discovered documents which were used by both parties during the trial."[4] This court remanded the matter to the district court for an evidentiary hearing because "it appears that Lamplugh's trial counsel may have turned over the records without having read all of them." *United States v. Lamplugh*, No. 99-3254, slip op. at 4 (3d Cir. Oct. 3, 2000).

Mr. Ellenbogen testified at the evidentiary hearing mandated by this court. He stated that "[a]s best I recall, Mr. and Mrs. Lamplugh presenting us with a box of records and information that they indicated had not been found in the search." Mr. Ellenbogen also testified that although "[w]e never made a formal inventory, in terms of a list of, this is Page 1, this is Page 2, this is Page 3, but we did open it, we did look through it and we did examine its contents . . . . We looked at every piece of paper that was in that box, I can tell you that, and there were four of us."

---

3. Mr. Lamplugh also appealed from the judgment of conviction. His appeal was dismissed as moot after his death.

4. Ms. Lamplugh did not seek a stay of execution of her sentence pending her appeal to this court. While awaiting her appeal, Mrs. Lamplugh served her sentence and paid her fine and assessment.

Mr. Ellenbogen also explained that in pretrial discussions, the Lamplughs and their attorneys developed the strategy that if the Government would introduce the disclosed documents Mrs. Lamplugh would not have to testify. The attorneys believed that by keeping the Lamplughs from having to testify they could "preserve their credibility . . . in the second phase of the trial." Mr. Ellenbogen testified that they concluded that if Mrs. Lamplugh was "convicted in the tax matters, those were only misdemeanor offenses and the potential consequences . . . were much less than had she been convicted of a felony." Mr. Ellenbogen further stated that he believed that their strategy "prevailed because Mrs. Lamplugh did testify in the second part of the trial, and she was acquitted of those offenses."

In granting Mrs. Lamplugh's motion for a new trial, the district court held that "the Government was supplied with the 'key' exhibits as a result of Attorney Ellenbogen's failure to conduct an adequate examination of the documents and warn his client of the consequences of producing documents that could be viewed as fabrications, [undermining] confidence in the jury's verdict."

### III

The Government asserts that "[b]ased on [Mrs.] Lamplugh's obstructive conduct, by duping her attorney into using false documents, she should not be able to complain that her counsel was ineffective in failing to discover her duplicity. More importantly, she should not be able to benefit from her duplicity by obtaining a new trial." Opening Brief for Appellant at 45. Prior to granting Mrs. Lamplugh's motion for a new trial based on ineffective representation by counsel, the district court commented that it was "troubled that a defendant could produce fabricated documents, have her attorney present the fabricated documents during trial, and then challenge her conviction because her attorney was less than diligent in discovering the fact that the documents were likely to have been fabricated."

The Government's contention presents us with this novel question: Does a defendant forfeit her right to the effective

assistance of counsel by presenting falsified copies of tax returns to her attorney in support of her theory of defense that the originals of such documents were properly filed in compliance with federal law? We exercise plenary review over claims alleging "denial of the Sixth Amendment right to counsel." *United States v. Leggett*, 162 F.3d 237, 249 (3d Cir. 1998).

This precise question has not been considered by this or any other court. Under the law of this circuit, it is clear, however, that a defendant forfeits her Sixth Amendment right to counsel by " 'engaging in extremely serious misconduct.' " *Id.* at 250 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1102 (3d Cir. 1995)). In *Leggett*, this court held that a defendant forfeits his right to counsel at sentencing by physically attacking his lawyer in full view of the trial court. *Id.* at 250-251.[5]

In *United States v. Carrara*, 49 F.3d 105 (3d Cir. 1995), the defendant entered a plea of guilty as part of an agreement in which he promised to provide truthful testimony to the grand jury and at trial. *Id.* at 106. Subsequently, the defendant filed a motion to set aside his guilty plea. *Id.* In support of his motion, he filed an affidavit in which he alleged that he was innocent. *Id.* This court noted in *Carrara* that "[t]his affidavit, however, created more problems for Carrara than it solved, and placed Carrara in a real dilemma: if the affidavit were true, his earlier testimony was perjury; if the trial testimony were true, the affidavit was perjury." *Id.* at 106-07. Based on the defendant's affidavit, the Government refused to file a § 5K1.1 motion for a downward departure. *Id.* at 106. The district court declined the defendant's request that he was entitled to specific performance of the plea agreement. *Id.* at 107.

Before this court, *Carrara* argued that he filed the false affidavit upon the advice of ineffective counsel. In rejecting this contention, this court stated:

---

5. In *United States v. McLeod*, 53 F.3d 322 (11th Cir. 1995), the Eleventh Circuit held that a defendant forfeited his right to counsel at a hearing on a motion for a new trial because his behavior toward his attorney was "repeatedly abusive, threatening, and coercive." *Id.* at 326.

> Carrara seeks to absolve himself of this (or these) falsehoods by contending that he filed the affidavit upon advice of ineffective counsel. This may be a reason, but it is not an excuse. The fact of the matter is, he lied. Having done so, he cannot come before the court with unclean hands and request that the government now be ordered to perform his version of equity. Specific performance requires that the court enforce every portion of the agreement, which most specifically here includes the government's right to withhold its motion because Carrara gave false testimony.

*Id.* at 107.

The record discloses that Mrs. Lamplugh acted with unclean hands in this matter in committing the following misconduct:

> First. Mrs. Lamplugh conspired with her husband to prepare false copies of federal income tax returns allegedly filed in 1991 and 1992.

> Second. She falsely represented to her attorney that these documents were genuine and that they should be used to demonstrate that she was not guilty of failing to file her federal income tax returns in 1991 and 1992.

> Third. She obstructed justice by directing her attorney to disclose the fraudulent tax returns to the Government as required by Rule 16(b) in order to introduce them as defense exhibits in an attempt to raise a reasonable doubt regarding her guilt.

> Fourth. She conspired to maneuver the prosecution into a Hobson's choice of abandoning its prosecution because she had found copies of the tax returns she allegedly filed in 1991 and 1992, or of appearing to suppress damaging exculpatory evidence overlooked by Government agents in executing the search warrant.

If this court were to grant Mrs. Lamplugh a new trial based on her claim of ineffective assistance of counsel, we would allow a defendant to manipulate the justice system by knowingly presenting fabricated written documents to

her counsel in an attempt to deceive the court, the jury, and the Government into accepting her theory of defense, or by successfully gaining a new trial when the strategy failed because the defense counsel did not detect the fraud.

Mrs. Lamplugh seeks to absolve herself of her misconduct by contending that her counsel was ineffective because he did not discover her deception. To grant a new trial under these circumstances would completely undermine the integrity of the judicial process.

## CONCLUSION

We hold that Mrs. Lamplugh forfeited the right to the effective assistance of counsel because of her extremely serious misconduct in presenting falsified copies of federal income tax returns, in a willful attempt to obstruct the proper administration of justice. Accordingly, we REVERSE the order granting a new trial in this matter and REINSTATE the judgment of conviction as to Mrs. Lamplugh. *See United States v. Coleman*, 811 F.2d 804, 808 (3d Cir. 1987).

A True Copy:
       Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*