COMMONWEALTH *vs.* MARK MEANS.

No. 07-P-417.

Plymouth. March 10, 2008. - May 27, 2008.

Present: COHEN, TRAINOR, & MEADE, JJ.

Further appellate review granted, 452 Mass. 1101 (2008).

*Constitutional Law,* Waiver of constitutional rights, Assistance of counsel. *Waiver. Practice, Criminal,* Assistance of counsel, Examination of jurors. *Attorney at Law,* Withdrawal. *Jury and Jurors.*

A criminal defendant failed to demonstrate that a trial court judge denied the defendant's constitutional right to counsel when the judge permitted court-appointed defense counsel to withdraw and refused to appoint successor counsel, where the defendant forfeited his right to counsel by his egregious, disturbing, and threatening misconduct toward his appointed counsel, which conduct was an obvious ploy to manipulate or obstruct the orderly procedure of the court and to interfere with the fair administration of justice. [793-797]

In a criminal case, the trial judge was not required, following the return of guilty verdicts against the defendant, to reexamine the jury sua sponte for bias and impartiality prior to the defendant's second trial on habitual offender indictments, where nothing in the record indicated that the jury's impartiality evaporated prior to the start of the second trial. [797-798]

INDICTMENTS found and returned in the Superior Court Department on March 15, 2002.

A motion to dismiss counsel was heard by *Linda E. Giles,* J., and the cases were tried before her.

*Deborah Bates Riordan* (*Theodore F. Riordan* with her) for the defendant.

*Audrey Anderson Kachour,* Assistant District Attorney, for the Commonwealth.

MEADE, J. After a jury trial, the defendant was convicted of assault and battery on a correction officer in violation of G. L. c. 127, § 38B, and assault and battery by means of a dangerous

weapon in violation of G. L. c. 265, § 15A(*b*).[1] Thereafter, in a separate trial with the same jury, the defendant was convicted of two counts of being a habitual criminal in violation of G. L. c. 279, § 25.

On appeal, the defendant claims he was denied his constitutional right to counsel when a judge permitted his court-appointed attorney to withdraw and refused to appoint successor counsel. The defendant also claims that the judge failed in her obligation to reexamine the jury for bias and impartiality prior to his second trial on the habitual offender indictments. We conclude that the judge did not err in finding that the defendant forfeited his right to counsel due to his egregious misconduct and in requiring him to proceed pro se at trial, and that the judge was not required sua sponte to reexamine the jury prior to the defendant's second trial. Accordingly, we affirm the defendant's convictions.

1. *Background.* a. *Dismissal of counsel.* An attorney, whom we will refer to as trial counsel, was appointed as the defendant's counsel in this matter. Prior to trial, the defendant moved pro se for the dismissal of trial counsel and for the appointment of new counsel. In support of his motion, the defendant made a variety of claims relative to trial counsel's interest in the case as well as his performance as counsel.[2] Soon after, trial counsel filed his own motion to withdraw as counsel based on the defendant's concerns. A Superior Court judge allowed trial counsel to withdraw, but appointed him to act as stand-by counsel, and ordered the defendant to proceed pro se.

Two months later, the defendant moved to dismiss trial counsel as stand-by counsel based on his lack of assistance, and to appoint new counsel. In support, the defendant stated that based on his "anger management" history and his "impulse control" issues, it would be in both their best interests if trial counsel were completely removed from the case. By the time of the

---

[1]The defendant was acquitted of vandalism by use of a noxious or filthy substance in violation of G. L. c. 266, § 103.

[2]The defendant alleged that trial counsel failed to file certain motions; failed to request the production of certain necessary documents; had only met with the defendant twice in two years of representation; did not seek a reduction in bail; had a complete "breakdown" in communication with the defendant; could not agree on a trial strategy with the defendant; and had suggested a guilty plea instead of preparing a defense.

hearing on the motion, the judge found that the defendant and trial counsel had apparently reconciled their differences, and she, with the defendant's consent, ordered trial counsel to resume his role as defense counsel.

The détente was short-lived. Within one month, the defendant again moved to dismiss trial counsel as his attorney. In support of the motion, the defendant submitted an affidavit, signed under the pains and penalties of perjury, which again complained of trial counsel's inattentiveness and performance. The affidavit also upped the ante with the following:

> "On March 6th, 2005, the defendant, Mark Means, had written a correspondence [sic] that was addressed to [trial counsel], threatening to commit multiple physical assaults, as well as threats to kill his family. In addition, the defendant's [b]lood, was also present in this correspondence to [trial counsel].

> "If [trial counsel] continues to remain on the defendant's criminal matter, then that [sic] very first chance the defendant do get [sic], the defendant, Mark Means, will physically assault, spit, kick, head-butt, etc., to [sic] him.

> ". . .

> "The defendant, Mark Means, his [sic] not playing around; this isn't any joke, I'm very serious! I have major mental health deficiencies, and present very serious anger management issues, due to lack of treatment[.[3]]

> ". . .

> "And as to the threats that were written and addressed to [trial counsel] on March 6th, 2005, [trial counsel] must be immediately removed from defendant's Brockton Superior criminal matter, because now, [trial counsel's] safety is at

---

[3]The judge noted in her written findings that although the defendant was free to "interpose a defense of lack of criminal responsibility" at trial, neither the defendant nor trial counsel had raised the issue. The judge further found that in speaking with the defendant, she "found no basis to determine [that he is] incompetent but, rather, perceived him as bright, articulate, and well-grounded in the law."

risk, due to this defendant committing, and possibly carrying such threats out."

The defendant's affidavit also noted that in an unrelated criminal case, the presiding judge had removed trial counsel as his attorney due to, inter alia, the defendant's threats directed at trial counsel.

b. *The hearing.* At the hearing on the defendant's motion, he admitted that he had sent the threatening letter to trial counsel and that he wanted trial counsel off the case, but claimed that he did not intend to harm counsel. Trial counsel asked that new counsel be appointed; the Commonwealth took no position. Based on the tenor of the defendant's motion, which the judge found to be "frightening," the judge allowed trial counsel to withdraw. However, because of the defendant's threats to do physical harm to trial counsel and his family, the judge deemed the defendant to have "waived" his right to another court-appointed attorney, and she refused "to subject another attorney to this type of behavior." The defendant stated that he wanted to represent himself, requested a trial date, and ably argued several pretrial motions.

c. *The judge's findings.* In her written decision on the matter, the judge found that the defendant had "engaged in egregious misconduct by threatening [trial counsel] and his family with serious bodily harm and even death." Therefore, she clarified, he had "forfeited" his right to proceed with trial counsel, or any successor court-appointed counsel, "who might run a similar risk of abuse." She further found that

> "[a]ny prejudice befalling the defendant is of his own making and appears to be minimal in light of his ability and zeal in representing himself. The court can infer from the habitual offender charges that the defendant is no stranger to the criminal justice system. Moreover, he possesses the legal acumen to have filed no fewer than twenty-seven pro se motions in this case to date, even while [trial counsel] continued to represent him."[4]

d. *The trial.* At the beginning of the trial, the judge noted that

---

[4]The judge denied the defendant's motion for reconsideration of the denial of his motion for appointment of successor counsel. The defendant's petition

she had received a letter from the Committee for Public Counsel Services (CPCS) indicating that the defendant had requested the assignment of counsel. In the letter, CPCS requested that the judge reconsider her decision finding that the defendant had forfeited his right to counsel, and notified her that CPCS had authorized the assignment of counsel for the limited purpose of presenting a motion for a competency evaluation[5] and a motion to reconsider the order denying counsel for the defendant.

That same morning, the court clerk's office received a telephone call from an attorney who was available to the defendant for the above-stated limited purposes. Based on the egregious nature of the defendant's threats of physical harm to trial counsel and his family, the judge declined to reconsider her decision. She specified that if she did reconsider and appoint new counsel, it would set a "chilling" precedent "that all a defendant would have to do would be to threaten his counsel with violence and that would result in a new attorney being appointed."

e. *The crimes.* The Commonwealth's evidence permitted the jury to find the following. On Christmas Eve in 2001, William Dineen, a correction officer at the Plymouth County Correctional Facility, was the victim of the defendant's disturbingly vile assault. While retrieving razors he had previously distributed to inmates, Dineen saw a razor come flying out from the two-inch gap at the bottom of the defendant's cell door. With Dineen's attention on the razor, the defendant threw at Dineen an open milk carton containing urine and feces. When the carton hit Dineen, its contents splashed onto his face and into his mouth and eyes. His uniform was covered with it.[6]

After decontaminating himself with a bleach solution, Dineen went to the hospital where he was tested for human immunodeficiency virus and received a series of shots for hepatitis and

---

for interlocutory review of the order denying the appointment of successor counsel was denied by a single justice of this court for want of jurisdiction.

[5]Relative to competency, the defendant was examined by a forensic psychologist who determined that the defendant was competent to stand trial and did not suffer from any major mental illness. On appeal, the defendant challenges neither the finding of his competency nor the adequacy of the process by which it was determined.

[6]The defendant later told another correction officer that Dineen was a "shit bag," and admitted that he had thrown the "shit" on him.

tetanus. After an initial round of blood tests that were negative, Dineen was told he had tested positive for hepatitis B. Three weeks later, he learned that it had been a false positive, and that he did not have hepatitis.

2. *Discussion.* a. *Forfeiture of the right to counsel.* The defendant claims he was denied his constitutional right to counsel at trial when a judge permitted his court-appointed attorney to withdraw and refused to appoint successor counsel. It cannot be gainsaid that an indigent criminal defendant has a constitutionally protected right to appointed counsel at trial under both the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. *Gideon* v. *Wainwright,* 372 U.S. 335, 344-345 (1963). *Commonwealth* v. *Sargent,* 449 Mass. 576, 579 (2007). See Mass.R.Crim.P. 8, as amended, 397 Mass. 1226 (1986); S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993). Although the right to counsel is a fundamental right, the guarantee of that right, like all constitutional rights, is not absolute.

In three different circumstances, a defendant can effectively forgo his right to the assistance of counsel through his conduct. The first, and most common, circumstance is where a defendant affirmatively waives his right to counsel at trial. Such a waiver must be knowing, voluntary, and intelligent to be effective. *Faretta* v. *California,* 422 U.S. 806, 835-836 (1975). *Commonwealth* v. *Appleby,* 389 Mass. 359, 366, cert. denied, 464 U.S. 941 (1983). See *Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938).

In the second circumstance, which occurs in the absence of an express waiver, a defendant can implicitly waive his right to counsel by his conduct. Often referred to as "waiver by conduct," see *United States* v. *Goldberg,* 67 F.3d 1092, 1100 (3d Cir. 1995), this may occur after a defendant has been warned that if he continues to engage in dilatory tactics, the judge will treat it as an implied request to proceed pro se. See, e.g., *United States* v. *Allen,* 895 F.2d 1577 (10th Cir. 1990) (court properly treated defendant's dilatory conduct as request to proceed pro se); *United States* v. *Bauer,* 956 F.2d 693, 695 (7th Cir.), cert. denied, 506 U.S. 882 (1992) (failure to hire counsel where defendant has financial ability to do so constitutes a waiver by

conduct); *Commonwealth* v. *Pamplona*, 58 Mass. App. Ct. 239, 240 (2003) (defendant's refusal without good cause to proceed with appointed counsel constituted a voluntary waiver of his right to counsel).

The third circumstance is forfeiture. Unlike waiver, forfeiture results in the loss of the right to counsel regardless of the defendant's knowledge and understanding of what he is losing and irrespective of his intent to relinquish the right. *United States* v. *Goldberg*, 67 F.3d at 1100. Because forfeiture does not involve a knowing and voluntary decision by a defendant, it may occur without regard to whether the judge has previously warned him about his misconduct, and without regard to whether he is aware of the risks of proceeding pro se. *Id.* at 1101. See *United States* v. *McLeod*, 53 F.3d 322, 326 (11th Cir. 1995) (finding forfeiture of counsel without prior warning); *Gilchrist* v. *O'Keefe*, 260 F.3d 87, 95 (2d Cir. 2001), cert. denied sub nom. *Gilchrist* v. *Smith*, 535 U.S. 1064 (2002) (noting that rights under Sixth Amendment to United States Constitution may be forfeited without prior warning).

Forfeiture of a fundamental constitutional right is, of course, an extreme sanction. But it is a sanction that may be meted out under the appropriate circumstances. For example, in *Illinois* v. *Allen*, 397 U.S. 337, 343 (1970), the Supreme Court held that, as a result of the defendant's misconduct, he forfeited his constitutional right to be present during his trial. The same is true in this Commonwealth. See *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 307 (1975). Similarly, a defendant can forfeit his right to be present by voluntarily absenting himself from the trial without good cause. See *Commonwealth* v. *Elizondo*, 428 Mass. 322, 325-326 (1998); Mass.R.Crim.P. 18(a)(1), 378 Mass. 887 (1979); Smith, Criminal Practice and Procedure § 29.32 (3d ed. 2007). In *United States* v. *Lamplugh*, 334 F.3d 294, 300-301 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit determined that because the defendant knowingly provided fabricated documents to her counsel in an attempt to deceive the court, she forfeited her right to claim her counsel was ineffective for not discovering her deception. Finally, in *Commonwealth* v. *Edwards*, 444 Mass. 526, 540 (2005), the Supreme Judicial Court adopted the concept of "forfeiture by

wrongdoing" and made it applicable to the right of confrontation where the defendant's misconduct was carried out with the intent to procure the witness's unavailability.

The circumstances of this case involve the appointment of counsel to an indigent defendant, a right which enjoys a rich legacy in the criminal trial process dating back to *Gideon* v. *Wainwright, supra.* Attorneys who accept court-appointed cases, like their counterparts in CPCS's public counsel division, provide an invaluable service not merely to their clients but to the judiciary and the criminal justice system as a whole. Difficult cases or cases with difficult clients are not accommodated with a special track or treatment. Much is expected and required of appointed counsel to fulfil their constitutional obligation to their clients. However, no appointed counsel should be required to endure the conduct exhibited here any more than our system of justice should be expected to tolerate it.

Here, as the judge found with considerable support, the defendant's misconduct towards his appointed counsel was egregious and disturbing. In a letter to trial counsel, the defendant not only threatened to commit multiple physical assaults (which he cataloged and described), but also threatened to kill trial counsel's family. Undoubtedly to lend a gory credibility to his message, the defendant smeared the letter with his blood. In furtherance of his goal to have trial counsel removed as counsel, the defendant submitted a motion to that effect, supported by an affidavit, signed under the pains and penalties of perjury, which informed the court of his letter to trial counsel. The defendant warned the court as to the sincerity of his threat, his "anger management issues," his self-perceived "mental health deficiencies," and the real safety risk he posed to trial counsel if trial counsel were not removed from the case.

Under these circumstances, the judge properly found that the defendant had forfeited his constitutional right to appointed counsel. The judge was fully within her authority to refuse to appoint another attorney and potentially subject him or her to the defendant's threatening behavior. However, our analysis does not involve an evaluation of the judge's prognosticative skills on the likelihood that the defendant would threaten some future attorney if one were to be appointed. Rather, we conclude

that the judge saw the defendant's tactics for what they were: an obvious ploy to manipulate or obstruct the orderly procedure of the court and to interfere with the fair administration of justice. She correctly put a stop to it. See *United States* v. *White*, 529 F.2d 1390, 1393 (8th Cir. 1976) ("Of course, the right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial"). The severe sanction of forfeiture was a proportionate response to the defendant's flagrant misconduct. See *Commonwealth* v. *Babb*, 416 Mass. 732, 734-735 (1994) (defendant's refusal to cooperate in his defense and his physical assault of appointed counsel constituted "abandonment" of right to counsel).[7] The decisions of courts in other jurisdictions are in accord with the forfeiture of the right to counsel we find here.[8] There was no

---

[7] In *Babb*, the Supreme Judicial Court chose to use the term "abandonment" rather than "forfeiture" (the term that had been used by the motion judge). *Commonwealth* v. *Babb*, 416 Mass. at 735. See *Commonwealth* v. *Stephens*, 44 Mass. App. Ct. 940, 945-946 (1998); Smith, Criminal Practice and Procedure § 19.7 (3d ed. 2007). More recently, in reference to confrontation clause rights, the court used the term "forfeiture," *Commonwealth* v. *Edwards*, 444 Mass. at 540, which is the term used by most other jurisdictions in circumstances similar to those presented here. See note 8, *infra*. Although we describe the result of the culmination of the defendant's misconduct here as a "forfeiture," the result would be the same if we had labeled it an "abandonment." See *Snyder* v. *Massachusetts*, 291 U.S. 97, 114 (1934) ("A fertile source of perversion in constitutional theory is the tyranny of labels").

[8] See *United States* v. *McLeod*, 53 F.3d at 326 (defendant forfeited his right to counsel by exhibiting abusive, threatening, and coercive conduct towards his attorney); *United States* v. *Leggett*, 162 F.3d 237, 250-251 (3d Cir. 1998), cert. denied, 528 U.S. 868 (1999) (defendant forfeited right to counsel where he physically assaulted his lawyer); *United States* v. *Thompson*, 335 F.3d 782, 785 (8th Cir. 2003), cert. denied, 540 U.S. 1134 (2004) (defendant forfeited right to counsel on appeal by threatening to kill his appellate attorney if he did not withdraw); *United States* v. *Thomas*, 357 F.3d 357, 363 (3d Cir. 2004) (defendant forfeited his right to counsel where he threatened his attorneys, was verbally abusive towards them, and refused to cooperate in defense); *United States* v. *Travers*, 996 F. Supp. 6, 17 (S.D. Fla. 1998) (finding forfeiture as a result of defendant's "persistently abusive, threatening, and coercive" dealings with his attorneys); *Bultron* v. *State*, 897 A.2d 758, 766 (Del. 2006) (defendant forfeited his right to counsel through abusive conduct towards his attorney, done with intention of forcing counsel to withdraw in order to impede progress of trial); *People* v. *Gilchrist*, 239 A.D.2d 306 (N.Y. 1997) (defendant forfeited his right to counsel when he assaulted his fourth appointed attorney); *People* v. *Sloane*, 262 A.D.2d 431, 432 (N.Y. 1999) ("defendant forfeited his right to counsel by his persistent pattern of threaten-

error and no abuse of discretion.[9]

b. *Examination of jurors.* After the jury returned its verdicts convicting the defendant of assault and battery on a correction officer and assault and battery by means of a dangerous weapon, the defendant was arraigned on the habitual offender indictment. Pursuant to G. L. c. 278, § 11A, and at the defendant's election, a separate trial was then held before the same jury. The defendant claims for the first time on appeal that the judge erred in not again asking the jury questions relating to bias and impartiality. We disagree.

Prior to empanelling the jury for the first trial, the judge asked the venire questions relating to whether they were related to, worked with, or were friends with the victim, the defendant, or the witnesses; whether they had any interest or stake in the case; whether they or an immediate family member or close personal friend had ever been a victim of a violent crime; whether they had formed an opinion about the case; whether they harbored any bias towards the parties; and, at the defendant's request, whether the differing races of the defendant and the victim would affect their ability to be fair and impartial in this case. See G. L. c. 234, § 28; Mass.R.Crim.P. 20(b)(1), 378 Mass. 889 (1979). At the conclusion of the voir dire, the judge found the venire to be indifferent.

Prior to the start of the second trial, the defendant did not request that the judge reexamine the jurors, and the judge was not required to do so sua sponte.[10] See *Commonwealth* v. *Keohane*, 444 Mass. 563, 572 (2005) (judge has "broad discretion" when examining venire for bias and impartiality). See also

ing, abusive, obstreperous, and uncooperative" behavior towards four successive appointed attorneys); *State* v. *Carruthers*, 35 S.W.3d 516, 549-550 (Tenn. 2000), cert. denied, 533 U.S. 953 (2001) (defendant who personally attacked counsel and threatened counsel's staff and family forfeited his right to counsel).

[9]The defendant asks that we take judicial notice of two Superior Court cases where, he claims, the defendants' behavior was more egregious than his own, and successor counsel was still provided. Because we are unaware whether forfeiture was put in issue in those cases, we do not find the anecdotes instructive.

[10]The first paragraph of G. L. c. 234, § 28, provides that a judge, "*[u]pon motion of either party*, . . . shall . . . examine [a prospective juror] to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein . . . ." (emphasis supplied).

*Commonwealth* v. *DiRusso*, 60 Mass. App. Ct. 235, 237-238 (2003) (judge at trial on indecent assault and battery not required to conduct sua sponte individual voir dire of potential jurors on question whether any juror had been victim of childhood sexual abuse). Indeed, G. L. c. 278, § 11A, explicitly contemplates the procedure followed in this case. Section 11A, inserted by St. 1967, c. 213, provides in pertinent part, "The court may, in its discretion, either hold the jury which returned the verdict of guilty of the crime, the trial of which was just completed, or it may order the impanelling of a new jury to try the issue of conviction of one or more prior offenses."

Merely claiming, as the defendant does, that the jury may have been biased because it had just convicted him in the first trial does not satisfy the defendant's burden of establishing the existence of a "substantial risk" of bias or extraneous influence on the jurors. See *Commonwealth* v. *LaFaille*, 430 Mass. 44, 51 (1999); *Commonwealth* v. *Ashman*, 430 Mass. 736, 739 (2000). Rather, we conclude that nothing in the record indicates that the jury's impartiality evaporated prior to the start of the second trial, and there was no risk that justice miscarried.

*Judgments affirmed.*