

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2006

# USA v. Russo

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2754

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Russo" (2006). *2006 Decisions.* Paper 1580.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1580

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2754

———

UNITED STATES OF AMERICA

v.

ANTHONY RUSSO
a/k/a ANTHONY ABATE,

Anthony Russo,

Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 02-cr-00482)
District Judge: Honorable Katharine S. Hayden

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 20, 2005

Before: SCIRICA, Chief Judge, VAN ANTWERPEN and ALDISERT, Circuit Judges

(Filed February 15, 2006)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Appellant Anthony Russo ("Russo") was one of three defendants indicted in the United States District Court for the District of New Jersey and charged with conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Russo himself was also charged with an additional ten counts, alleging mail fraud that resulted in the loss of money, property, and deprivation of the right to the honest services of public officials (18 U.S.C. §§ 1341 & 1346), embezzlement or conversion of governmental property (18 U.S.C. § 641), and making false and fraudulent statements (18 U.S.C. § 1001). Following a jury trial, Russo was convicted on all counts. Russo thereafter filed a post-judgment motion for acquittal and alternatively moved for a new trial on all counts, which were both denied. The District Court sentenced Russo to seventy months' imprisonment, as well as ordered him to pay restitution to the United States. On appeal, Russo makes several arguments concerning the propriety of his conviction and sentence. For the following reasons, we will affirm his conviction and the order of restitution. However, in light of the Supreme Court's holding in United States v. Booker, 125 S.Ct. 738 (2005), as well as our decision in United States v. Davis, 407 F.3d 162 (3d Cir. 2005), we will vacate Russo's sentence and remand to the District Court for resentencing.

## I. Facts

Dominick Russo (Russo's half-brother) was a Deputy United States Marshal who served as Chief of the Asset Forfeiture Unit for the District of New Jersey. Russo,

Dominick, and one Patricia Eichelsdoerfer, concocted and executed a scheme to defraud the Asset Forfeiture Unit by using Dominick's position to dispose of seized and forfeited vehicles and real property for their personal gain. To realize this goal, Dominick would sell Russo and Eichelsdoerfer forfeited vehicles and real property without disclosing that these items were being sold to members of his family and friends and without first having offered them to the general public. He would also arrange for the payment of fraudulent real estate commissions to friends, from which he received at least one kickback.

In July 1998, Dominick sold the property located at 11 Cutlass Way, Waretown, New Jersey, to Russo for $108,000. This amount represented eighty-five percent of the appraised value of the property.[1] In order to conceal this transaction, Dominick made it appear that one Nancy Abate, Russo's girlfriend, was the purchaser: Abate would borrow $108,000 from the "Moose and Moo Trust,"[2] established by Russo (as the sole trustee), and signed documents providing that the property would revert to the trust if she failed to make payments on the loan. Russo moved into the property as early as March 1998, or four months prior to the sham sale to Abate. He established utilities and an insurance policy in Abate's name without her knowledge.[3] Tellingly, Russo contacted a real estate

---

[1] The Government notes that, had the property been sold for an amount less than eighty-five percent of the assessed value, Dominick would have required special approval from Washington, D.C.

[2] "Moose" and "Moo" are Russo's nicknames for his two children.

[3] Ultimately, Abate lived in the house a mere six weeks in the fall of 1998.

agent on April 7, 1998, and said he might be interested in selling the property and that he wanted to make at least a $20,000 profit from the resale. The agent was made to believe that Russo owned the property at that time.

Dominick also sold several seized automobiles outside the normal auction process. On February 13, 1998, Dominick sold a 1987 Chevrolet Corvette to Russo for $4,000. Russo disguised his purchase by writing a check drawn on the account of "Ameri-Car & Truck Sales." Although Russo had worked for Ameri-Car, he was not authorized to sign vehicle titles for the company, and Ameri-Car never received the Corvette into its inventory. Russo instead sold the Corvette to one George Wang, for $8,000. Similar sham transactions and resales were made with regard to a 1986 Mercedes Benz, sold to Russo for $2,100 and given to Abate, as well as a 1991 Mercedes Benz, sold to Russo for $4,200 and sold to one William Saley, for $12,750.

Russo, as well as Dominick and Eichelsdoerfer, were charged in a 21-count indictment. A jury trial began on April 8, 2003, and the jury retired for deliberation on June 27, 2003. After two days, the jury returned its verdict convicting Russo on all eleven counts in which he was charged. At sentencing, the District Court denied the Government's motion for upward departure, as well as Russo's motions for downward departure. According to the Sentencing Guidelines applicable at that time, Russo was to be sentenced within the range of sixty-three to seventy-eight months,[4] and was sentenced

---

[4] This range was based in part on two judicially-found facts, namely that the offenses involved a high government position, and that Russo had obstructed justice.

to a seventy-month term of imprisonment. Russo was also ordered to make restitution to the Government, which included returning the Waretown property and paying $18,025 for the three vehicles he obtained improperly from the Marshal's Service.

Russo timely appealed both his conviction and sentence to this Court.[5]

## II. Discussion

On appeal, Russo makes five claims of error with regard to his conviction and sentence: (1) the District Court erroneously interpreted the Mail Fraud Act, and as a result failed to properly charge the jury, as well as failed to use special verdict sheets; (2) the order of restitution should have been limited to the actual loss suffered by the Marshal's Service; (3) the District Court erred in admitting lay opinion testimony used to establish the value of the Waretown property; (4) there was insufficient evidence to convict Russo of embezzlement and conversion of governmental property, conspiracy, and false statements and representations; and (5) his sentence violates his rights under the Sixth Amendment. We shall take each contention in turn.[6]

*A. Russo's Mail Fraud Conviction.*

---

[5] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, and our jurisdiction is grounded in 28 U.S.C. § 1291.

[6] Russo has included more than 8,000 pages of exhibits and trial transcripts in the Appendix. However, only a small fraction of these pages were cited by the parties, making the majority of the Appendix unnecessary. Counsel also failed to include a table of contents at the beginning of the Appendix, as required by Rule 30. See Fed. R. App. P. 30(d) ("The appendix must begin with a table of contents identifying the page at which each part begins.").

Russo's first claim of error is that the District Court improperly interpreted the Mail Fraud Act, 18 U.S.C. §§ 1341 & 1346, and because of that erroneous interpretation, incorrectly charged the jury. He further contends that the District Court abused its discretion in denying his request for the use of special verdict sheets. When a defendant challenges a jury instruction's "statement of the legal standard, we exercise plenary review." United States v. Urban, 404 F.3d 754, 779 (3d Cir. 2005) (citing United States v. Zehrbach, 47 F.3d 1252, 1260 (3d Cir. 1995)). We review all other challenges to jury instructions for abuse of discretion. Id. Having not objected to the mail fraud jury charge at trial, however, we review Russo's argument only for plain error. United States v. Retos, 25 F.3d 1220, 1228 (3d Cir. 1994).

To prove mail fraud, the Government must establish beyond a reasonable doubt that (1) a defendant knowingly and willfully participated in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) used the mails in furtherance of the scheme. United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001) (citing United States v. Clapps, 732 F.2d 1148, 1152 (3d Cir. 1984)); see also 18 U.S.C. § 1341. A "scheme or artifice to defraud" includes a plan to deprive another of his or her "intangible right of honest services." Antico, 275 F.3d at 261; 18 U.S.C. § 1346. Thus, a person may be prosecuted for depriving citizens of their right to honest services performed by public officials. See id. at 262.

1. The Jury Instructions

6

Russo first contends that the District Court erred by failing to instruct the jury that, in order to convict him of honest services mail fraud under 18 U.S.C. § 1341, the scheme or artifice must either lead to actual harm, or it must be proven that he intended actual injury.[7] With regard to the required intent in mail fraud cases, it is well-established that, "[w]hen the 'necessary result' of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." United States v. D'Amato, 39 F.3d 1249, 1257 (2d. Cir 1994). However, "[w]here the scheme does not cause injury to the alleged victim as its necessary result, the government must produce evidence independent of the alleged scheme to show the defendant's fraudulent intent." Id. Russo acknowledges this standard but attacks the jury charge on intent as insufficient, claiming that the District Court failed to instruct the jury that either (a) a scheme must, by its nature, intend actual harm, or (b) if the natural result of a scheme was not harm to the victim, that the Government must present additional evidence of intent. We conclude to the contrary, and find that the District Court properly charged the jury. Indeed, we discern no error in the charge at all, let alone the high threshold of plain error that Russo must overcome on this point.

The District Court instructed the jury with regard to intent necessary for mail fraud, as follows:

". . . [t]he second element of mail fraud is the defendant participated in the

_____

[7] The Government strenuously argues that it has never been disputed that it was required to prove intent to deceive, and we find no evidence to the contrary.

7

scheme knowingly, willfully and with intent to defraud. Intent to defraud means to act knowingly and with a specific intent to deceive for the purpose of causing some deprivation or loss to another of money, property, or honest services. . . . This question involves one's state of mind. Direct proof of knowledge and fraudulent intend [sic] is almost never available. It will be a rare case where it could be shown that a person wrote or stated that at a given time he committed an action with fraudulent intent. Such direct proof is not required. The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom."

(App. at 7460-61.) While we agree with Russo that this jury instruction does not use the phrase "actual injury," we disagree that it is deficient as a matter of law. The District Court instructed the jury that, if they found that Russo's scheme was intended to defraud the victim (in this case, the Marshal's Service), the second element of mail fraud would be satisfied. This instruction is in line with the legion of cases explaining the requirements of mail fraud, and Russo's claim of error casting doubt on the District Court's decision to speak in terms of "intent to defraud" as opposed to "intent to cause actual injury" creates an issue where one does not exist.[8] We are satisfied that the jury adequately understood that a scheme punishable under 18 U.S.C. § 1341 must be one that envisions causing some measure of harm, and consequently the District Court did not

---

[8] Fraud is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her *detriment*." Black's Law Dictionary 685 (8th ed. 2004) (emphasis added).

plainly err.[9]

2. Verdict Sheets

Turning to the question of the verdict sheet used, we note as an initial matter that special verdict sheets are generally disfavored in criminal trials. See United States v. Desmond, 670 F.2d 414, 416 (3d Cir. 1982) ("As a general proposition, special verdicts are generally disfavored in criminal cases, but there is no per se rule against them."); see also United States v. Frezzo Bros., Inc., 602 F.2d 1123, 1129 (3d Cir. 1979) (noting that "there is the belief that in the long run special verdicts are not favorable to defendants because by a progression of questions each of which seems to require an answer unfavorable to the defendant, a reluctant juror may be led to vote for a conviction which, in the large, he would have resisted."). However, they may be necessary in exceptionally complex cases. See, e.g., United States v. Poehlman, 217 F.3d 692, 698 n.7 (9th Cir. 2000). Aside from these rare cases, we have held that a general unanimity instruction will suffice. United States v. Russell, 134 F.3d 171, 176 (3d Cir. 1998) ("While it is true that in most cases a general unanimity instruction is sufficient to support a conviction . . . a specific unanimity instruction is required 'where the complexity of the case, or other factors, creates the potential that the jury will be confused.'").[10] A district court has

_____

[9] Of course, no actual harm need result in order for a defendant to be liable. See United States v. Hedaithy, 392 F.3d 580, 601-04 (3d Cir. 2004).

[10] The Government notes that Russo challenges only the District Court's refusal to employ special verdict sheets. We respectfully disagree, as Russo's brief alternatees between an argument for special verdict sheets (Brief at 35) and an argument for an

9

discretion in determining whether to submit special interrogatories to the jury regarding the elements of an offense, and accordingly we will review only for an abuse thereof. See United States v. Console, 13 F.3d 641, 663 (3d Cir. 1993).

At trial, the Government alleged alternative deprivations in support of Russo's mail fraud indictment: an honest services violation (with regard to Dominick), a property violation (with regard to the Waretown property), and a money violation. Russo argues that the Government advanced one untenable legal theory (namely, the honest services violation), and that, without a special verdict sheet to confirm that Russo was not convicted on that charge, our holding in United States v. Syme, 276 F.3d 131, 144 (3d Cir. 2002), commands that his verdict be vacated. Having determined that the District Court's jury charge was legally sufficient, however, we cannot say that one of the theories supporting Russo's conviction was unconstitutional or legally untenable. See id.

Moreover, the mere fact that the Government alleged alternative legal theories with regard to the mail fraud count does not necessitate the use of special verdict sheets. While Russo claims that it is unclear whether the jury unanimously convicted him of mail fraud under the honest services theory, the property theory, or the money theory, it is clear that the jury, at the very least, believed that he intentionally acted to deprive the Marshal's Service of the use and benefit of the Waretown property, as it convicted him of unlawful conversion of the Waretown property pursuant to 18 U.S.C. § 641. This provides

augmented unanimity instruction. (Brief at 36.) Both concerns, however, can be addressed concurrently.

10

sufficient support for the Government's property theory of mail fraud, making any error harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993) (absent a showing that a trial court's omission of a unanimity instruction "had a substantial and injurious effect or influence in determining the jury's verdict," the failure to give such an order is harmless); cf. Griffin v. United States, 502 U.S. 46, 56-57 (1991) (holding that, when a defendant is convicted of a crime based on alternative theories, and the Government produces sufficient evidence to convict on one theory, a reviewing court need not consider whether the evidence is sufficient on the alternative ground). We therefore find no reversible error arising from the District Court's decision to use a general verdict sheet or its decision to employ a general unanimity charge.

*B. The Restitution Order.*

Russo next challenges the restitution order imposed by the District Court. That order instructed Russo to return the Waretown property to the Marshal's Service, as well as to make monetary restitution for the three vehicles that he fraudulently obtained. Russo contends that the District Court improperly calculated restitution and erred by failing to conduct a restitution hearing. We exercise plenary review as to whether restitution is permitted by law, but apply the abuse of discretion standard as to the appropriateness of a particular award. United States v. Himler, 355 F.3d 735, 744 (3d Cir. 2004).

1. The Waretown Property

We shall first address the return of the Waretown property. Under the Mandatory

Victim Restitution Act, for crimes involving property, a restitution order must command,

if possible, that the ill-gotten property be returned to its rightful owner. See 18 U.S.C.

§ 3663A(b); see also S. Rep. No. 104-179, at 18 (1996), reprinted in 1996 U.S.C.C.A.N.

924, 931 ("It is essential that the criminal justice system recognize the impact that crime

has on the victim, and, to the extent possible, ensure that offender be held accountable to

repay these costs"). Russo contends that it is unfair to grant the Marshal's Service a

"windfall" by returning the property to it and effectively awarding it six years' worth of

appreciation value. He further argues that he should receive credit for improvements

allegedly made to the property while it was under his control. We believe that both of

these points of error can be addressed by reviewing the plain language of 18 U.S.C.

§ 3663A, and adding to it our commonsense understanding of the purposes of restitution.

United States Code Title 18, Section 3663A reads, in relevant part:

> "The order of restitution shall require that such defendant . . . in the case of
> an offense resulting in damage to or loss or destruction of property of a
> victim of the offense (A) return the property to the owner of the property or
> someone designated by the owner; or (B) if return of the property under
> subparagraph (A) is impossible, impracticable, or inadequate, pay an
> amount equal to (i) the greater of (I) the value of the property on the date of
> the damage, loss, or destruction; or (II) the value of the property on the date
> of sentencing, less (ii) the value (as of the date the property is returned) of
> any part of the property that is returned . . . ."

18 U.S.C. § 3663A(b)(1). The statute plainly requires the return of any ill-gotten property

which has been acquired by, *inter alia*, fraud on the victim. The statute does not provide

for an appreciation or improvement discount for the defendant. Russo has not presented a single case that supports his claim he should receive such credits, nor can we find one. Indeed, the value to be considered is the value on the date Russo acquired the property, or the value on the date of sentencing, *whichever is greater*. See 18 U.S.C. § 3663A(b)(1)(B). The plain language of the statute does not differentiate between an increase in value because of market appreciation and an increase in value due to improvements. Absent any support for Russo's argument either in statutes or case law, we are disinclined to read into 18 U.S.C. § 3663A that which is not there.

Moreover, we believe such an approach is in line with the clear purposes of restitution. While not intended to be primarily punitive, restitution "is separate and distinct from any punishment visited upon the wrongdoer and operates to ensure that a wrongdoer *does not procure any benefit through his conduct at others' expense*." United States v. Newman, 144 F.3d 531, 538 (7th Cir. 1998) (citing 1 George E. Palmer, The Law of Restitution § 1.1, at 5 (1978)) (emphasis added). We believe that forcing Russo to relinquish his property, together with the value of the appreciation and improvements, prevents him from benefitting from his wrongful conduct.[11] Russo gambled when he added value to an ill-gotten property, and it must be a losing wager. See United States v.

---

[11] Indeed, as the Government notes, had Russo swindled an elderly couple of their home, held it for several years, and improved the property in some manner, no reasonable person would expect the couple would have to pay Russo as a condition of getting their home back. Replacing the elderly couple with the Marshal's Service should, logically, affect no change in this hypothetical.

Carrara, 49 F.3d 105, 108 (3d Cir. 1995) (". . . restitution is also remonstrative, and, where indicated, will require that offenders disgorge their ill-gotten gains").  The District Court therefore did not abuse its discretion in ordering the transfer of the Waretown property back to the Government.

### 2. The Automobiles

With regard to the three vehicles Russo converted, the District Court concluded that the total restitution to be paid was $18,025.[12]  Russo argues that the District Court erred in awarding the Marshal's Service the price he received from the sale of the Corvette and Mercedes Benz 190E and estimating the value of the Mercedes Benz 300E he gave to Abate.  Instead, Russo asserts that the District Court should have used only the fair market value for the vehicles in question at the time he acquired them to determine the amount of restitution.[13]  As was the case with the Waretown property, he argues *sub silentio* that he is entitled to any profit made on the sale of the cars.

As we did with regard to the Waretown property, we will dispense with this argument by referring to the plain language of the statute.  If the return of property is "impossible, impracticable, or inadequate," a court shall order payment in the amount of the value of the property on the date of sentencing if that value is greater than the value of

_____

[12] This amount is the total resultant gain Russo received from selling the Corvette and the Mercedes Benz 190E, plus the estimated fair market value of the Mercedes Benz 300E given to Russo's girlfriend.

[13] Again, Russo argues that, because he allegedly added value to the vehicles by repairing them, he is entitled to the value of his investment.

14

the property on the date of the loss.  See 18 U.S.C. § 3663A(b)(1)(B).  This provision

obviously envisions preventing the criminal from retaining any gains resulting from his

criminal activity by forcing the disgorgement of any profits he may have retained from the

sale of an ill-gotten asset.  Because Russo sold the two vehicle to *bona fide* purchasers, it

is not possible for him to return them to the Marshal's Service.  Thus, he is liable for the

value of these vehicles at the time he acquired them, or the time of his sentence, whatever

is greater.  Russo sold the two cars for a total profit of $12,550, which is an acceptable

measure of their value.  See, e.g., United States v. Napier, 273 F.3d 276, 279-80 (3d Cir.

2001) (holding that it was not clearly erroneous for a district court to assign value to an

asset based upon its actual sale price rather than an appraisal).[14]  With regard to the car

given as a gift to Abate, the probation office estimated the value of the vehicle to be

$7,575.  Russo disputed this amount in his response to the Presentence Report, yet he

took issue with that value only to the extent that "[c]ars at [Marshal's Service] auctions

were typically purchased below [their estimated value.]" This does not attack the

reliability of the Marshal's Service estimate, but rather the amount of loss incurred by the

Service.  There is no evidence countering the Marshal's estimate of the fair market value

of the vehicle, and consequently, it was not clear error for the District Court to rely upon

that estimate when crafting the restitution order.

---

[14] Thus, we cannot say it was erroneous for the District Court to discount testimony
suggesting that the Marshal's Service tries to obtain only a percentage (between 65%-
75%) of a vehicle's appraised value at auction.  See id.

15

<u>    3. Remaining Issues</u>

We now address Russo's remaining arguments regarding restitution.  Contrary to Russo's argument on appeal, an evidentiary hearing was not required below to determine the values of the various assets at issue here.  The District Court utilized values contained in the Presentence Report, which were estimated by the Marshal's Service.   The District Court's decision to use the appraisal value was essentially a fact-based determination, which we review for clear error.  <u>United States v. Sharma</u>, 190 F.3d 220, 229 (3d Cir. 1999).  We find none.  Moreover, Russo did not request such a hearing, and was permitted to make argument and present evidence at his sentencing hearing regarding valuation of assets.  Whether the District Court should have held an evidentiary hearing is committed to its discretion; because the values used were not clearly erroneous and because Russo was given the opportunity to present additional evidence at sentencing, we perceive no abuse thereof.  <u>See</u> 18 U.S.C. § 3664 (no requirement that the district court hold an evidentiary hearing on restitution matters); <u>see</u> <u>also</u> <u>Cagle v. Hutto</u>, 177 F.3d 253, 258 (4th Cir. 1999).

Second, Russo claims that the District Court's order requiring the return of the Waretown property improperly disregarded that it was the sole asset of a trust which benefitted his children.  He claims that, absent a jury finding that the family trust was a sham, the trust cannot be invaded.  We reject this argument out of hand.  The jury concluded, beyond a reasonable doubt, that Russo had defrauded the Marshal's Service of

the Waretown property. Furthermore, the District Court heard testimony that Russo's children were the sole beneficiaries of the "Moose and Moo Trust," and that he was the sole trustee. From the evidence available, it was clear that the trust was employed, not to benefit Russo's children, but rather to disguise the transfer and control of the Waretown property. The District Court did not clearly err in its conclusion that the trust was a sham. See Sharma, 190 F.3d at 229. We will not permit Russo to hide behind his children in a futile attempt to retain control of the property he fraudulently obtained. Were we to do otherwise, we would be creating a perverse rule of law allowing criminals guilty of fraud to protect their stolen property simply by placing it in trust. We decline such an invitation.

Finally, Russo's argument that a restitution order is subject to strictures on sentencing imposed by the Supreme Court in United States v. Booker, 125 S. Ct. 738 (2005), has been firmly rejected by this Court. In United States v.Leahy, Nos. 03-4184/03-4490/03-4542/03-4560/04-2912, — F.3d — (3d Cir. 2006) (en banc), an en banc panel of this Court held that the rule of Booker is inapplicable to orders of restitution under the Victim and Witness Protection Act and the MVRA.

*C. The Lay Opinion Testimony.*

Russo next attacks the admission of testimony by several individuals who live near or had knowledge of the Waretown property. This evidence was presented by the Government to establish the loss to the Marshal's Service. Russo takes issue specifically

with five witnesses presented by the Government: Ms. Marie Wanner, Ms. Denise Green, Ms. Dorothy Schmidt, Ms. Ann Ferguson, and Mr. Ralph Carrigan. He argues that the testimony of the five witnesses that was produced to establish the fair market value of the Waretown property during the period in which Russo acquired it amounted to lay opinion testimony that fell outside of that which is permitted under Federal Rule of Evidence 701.[15] This evidence, he contends, prompted the jury to improperly conclude that the Government incurred a loss through Russo's purchase of the Waretown property.

As a threshold matter, we note that Russo did not object to the testimony of Ms. Green, Ms. Schmidt, or Ms. Ferguson. See United States v. Polishan, 336 F.3d 234, 241 (3d Cir. 2003) (noting that a court exercises plain error review over the admission of evidence if a defendant does not contemporaneously object). He did, however, request that Ms. Wanner and Mr. Carrigan be precluded from offering opinion testimony concerning the value of the Waretown property. The District Court concluded that their proposed testimony was based on first-hand knowledge and was thus admissible under Rule 701. We review the ruling under an abuse of discretion standard, although we exercise plenary review over the District Court's conclusions of law. United States v. Scott, 223 F.3d 208, 211 (3d Cir. 2000).

---

[15] "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

18

Turning first to Ms. Green, Ms. Schmidt, and Ms. Ferguson, we conclude that it was not plain error to admit their testimony. Ms. Green stated only that she and her then-fiancé were interested in bidding on the Waretown property, and that Dominick led her to believe that there would be an open house to view the property. With regard to valuation of the property, she stated only that she and her fiancé had settled on a potential price they were willing to offer. At no time did she claim to be estimating the market value of the property. Thus, Russo's claim that Green offered lay opinion testimony regarding the worth of the Waretown property is a misreading of the trial transcript.

Russo's interpretation of Ms. Schmidt's testimony is similarly flawed. Schmidt, a realtor, was contacted by one Tony Abate (one of Russo's many aliases), who asked to have the Waretown property listed for sale. "Abate" stated that he wanted to receive $128,000 from the sale. Consequently, Schmidt added to that amount the appropriate commission, costs, and a certain amount of "wiggle room" in case a potential buyer wanted to bargain on the price, ultimately reaching an asking price of $140,000. While testifying, Schmidt clearly explained how she reached the selling price she would assign the property. Incredibly, Russo contends that she failed to explain how she reached the value, notwithstanding her explanation of how she reached the value, and despite the fact that the only subjective value used in her calculation (aside from the arbitrary bargaining amount) was provided *by him*. At no time did Schmidt contend that this was the fair market value for the property.

Finally, Ms. Ferguson testified that she was interested in purchasing a house for her daughter in the vicinity of the Waretown property. Having only viewed the property from the outside, she felt that $125,000 would be a "bargain." Never did she assert that $125,000 was the fair market value. While we do not know what markup above the fair market value Ferguson would consider to be a "bargain," we do know she was not presented to establish how much the market valued the property. In summary, we discern no error, let alone plain error, arising from the admission of the above testimony.

With regard to Ms. Wanner and Mr. Carrigan, we conclude that the District Court did not abuse its discretion in admitting their testimony. Wanner stated only that her house sold for $240,000. She did not estimate the value of the Waretown property, and the District Court did not abuse its discretion in admitting the testimony. Carrigan, a part-time realtor, was the only witness to give an opinion as to the value of the property. He testified that Russo said he had paid $115,000 for the Waretown property, and that Carrigan thought at the time that that was a low price for that particular property. When asked, Carrigan stated that his opinion was based on his knowledge of similar properties in the area that were selling above that price. This is an acceptable basis on which a lay witness may form an opinion as to the value of a property, and consequently it is not an abuse of discretion for a district court to allow its admission. See, e.g., McCormick on Evidence § 199 at 295 (5th ed. 1999); United States v. 60.14 Acres of Land, More or Less, in Warren and McKean Counties, State of Pa., 362 F.2d 660, 665 (3d Cir. 1966)

20

(". . . evidence of comparable sales therefore has always been admissible both as substantive evidence and to support a witness' opinion. Indeed, it has been described as the best evidence of market value.") (internal footnote omitted).

In sum, none of the testimony cited by Russo was admitted in error, let alone plain error or as the result of an abuse of discretion.

*D. Sufficiency of the Evidence.*

The fourth claim of error we address argues that there was insufficient evidence to sustain convictions on the charges of (1) Embezzlement and Conversion of Governmental Property (18 U.S.C. § 641); (2) Conspiracy (18 U.S.C. § 371); and (3) False Statements and Representations (18 U.S.C. § 1001). It is well-established that, in deciding whether a jury verdict is based on legally sufficient evidence, we apply a particularly deferential standard of review. United States v. Cothran, 286 F.3d 173, 175 (3d Cir. 2002). Under this standard, we must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt. See United States v. Cartwright, 359 F.3d 281, 285-286 (3d Cir. 2004).

1. The Embezzlement and Conversion of Governmental Property Charges

United States Code Title 18, Section 641 provides, in relevant part

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any [governmental property]; or [w]hoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been

21

embezzled, stolen, purloined or converted [shall be fined or imprisoned]."

18 U.S.C. § 641. Russo contends that he cannot be held criminally liable for his under-value purchases of government assets because Dominick had the authority to dispose of the assets that were sold. However, as the Government aptly notes, proof of authority to dispose of government assets is not critical for a 18 U.S.C. § 641 conviction. Under the plain language of the statute, someone is liable under 18 U.S.C. § 641 if they (1) embezzle, steal, purloin, or knowingly convert government property; *or* (2) without authority, sell, convey or dispose of any government property; *or* (3) receive, conceal, or retain the same with intent to convert it to his use or gain, knowing that it has been embezzled, stolen, purloined or converted. See 18 U.S.C. § 641. Thus, any absence of proof that Dominick was without authority to dispose of the assets only forecloses the second possible theory for 18 U.S.C. § 641 liability. See United States v. Jeter, 775 F.2d 670, 680-81 n.10 (6th Cir. 1985). Without belaboring the point, there is certainly sufficient evidence in the record for a reasonable juror to conclude beyond a reasonable doubt that Russo received embezzled government property (the Waretown property and the three vehicles) with intent to convert it to his use or gain with knowledge that it had been embezzled.

2. The Conspiracy Charge

Russo's next sufficiency of the evidence claim, pertaining to the conspiracy charge, fares little better. He argues that the Government failed to establish a single,

22

unitary conspiracy to defraud the United States involving himself, Dominick, and Eichelsdoerfer, as was charged in the indictment.  Where a single conspiracy is alleged in an indictment, and the evidence at trial merely proves the existence of several distinct conspiracies, there is an impermissible variance.   United States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989).[16]  "A defendant alleging a variance between a single conspiracy charged in an indictment and the proof presented at trial must demonstrate, first, that there was such a variance and, second, that the variance prejudiced one of his substantial rights."  United States v. Quintero, 38 F.3d 1317, 1337 (3d Cir. 1994).  Because we conclude that Russo could have suffered no prejudice even if the alleged variance existed, we need not consider whether or not there was an impermissible variance.

The variance doctrine is designed to protect a defendant from being tried "en masse for the conglomeration of distinct and separate offenses committed by others."  United States v. Perez, 280 F.3d 318, 346 (3d Cir. 2002) (quoting United States v. Salmon, 944 F.2d 1106, 1116 (3d Cir. 1991)).  Thus, if the jury was able separate the various defendants and schemes, and there was no risk that guilt might be transferred from one alleged co-conspirator to another, no prejudice can lie.  See United States v. Barr, 963 F.2d 641, 648 (3d Cir. 1992).  Russo argues that he was prejudiced by the

_____

[16] We have adopted a three-step inquiry to distinguish a single conspiracy from a series of separate, unrelated conspiracies: we examine (1) whether there was a common goal among the conspirators; (2) whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators; and (3) the extent to which the participants overlap in the various dealings. Id. at 259.

presentation of evidence of transactions involving solely Dominick and Eichelsdoerfer, in which he had no part. We fail to see how evidence of dealing in which Russo had no part could possibly cause the transference of guilt that the variance doctrine guards against, especially because the jury ultimately found Eichelsdoerfer not guilty on all counts. Consequently, there is no risk that "Eichelsdoerfer guilt" poisoned the Russo verdict in any way. See id. We therefore find no prejudice necessitating reversal.

### 3. The False Statements and Representations Charges

Finally, Russo argues that there was insufficient proof that he made false statements in connection to the purchase of the Waretown property and the three vehicles. We can dispense with this claim of error quickly.

With regard to the Waretown property, we easily conclude that there was sufficient evidence to support a finding that Abate was a sham purchaser and that Russo, not Abate, was the true owner. Since the record is replete with evidence supporting the jury's verdict on this point, we need not go into unnecessary detail. However, we note in passing that the jury heard testimony that Abate did not really want to live at the Waretown property, and did not have the ability to make payments on the house. The jury also heard that Russo was the sole trustee of the "Moose and Moo" Trust, and that any failure by Abate to make payments on the loan would result in its reversion to the Trust. We believe that this evidence, by itself, would have been sufficient to sustain the verdict.

24

Moving to the vehicles, the jury heard testimony from one Michael Dorata who testified that Russo was never authorized to sign title certificates in the name of Ameri-Car. As stated above, Russo bought the three vehicles from the Marshal's Service in Ameri-Car's name, not his own. Dorata also noted that, had Ameri-Car been involved, Russo would have been required to generate the appropriate paperwork, which he never did. The individuals to whom Russo transferred vehicles also testified that they dealt only with Russo, and not with Ameri-Car. There was more than sufficient evidence to prove the making of false statements with regard to the vehicles.

*E. Russo's Sentence.*

Finally, Russo argues that his base sentence was impermissibly enhanced with facts not found by the jury beyond a reasonable doubt. Specifically, the District Court found that the offenses charged involved an official holding a high-level position, see U.S.S.G. § 2C1.7, and that Russo engaged in measures to obstruct justice, see U.S.S.G. § 3C1.1. These are judicially-found facts that, in light of United States v. Booker, as well as our holding in United States v. Davis, impermissibly enhanced Russo's sentence. Furthermore, we note that the District Court stated that it was bound by the Sentencing Guidelines, believing that they were not merely advisory. As such, Russo's sentence must be vacated and this case remanded for resentencing.

### III. Conclusion

For the foregoing reasons, we affirm both Russo's conviction as well as the order

of restitution.  We will also vacate his sentence.  This case is remanded to the District

Court for further proceedings consistent with this opinion.